## NEWPORT COUNTY.

SAMUEL E. ALMY *vs.* DANIEL T. CHURCH *et als.*

The proprietors of the Puncatesett purchase in A. D. 1663, laid out certain high-ways in their allotment of lands ; Records of the town of Plymouth, vol. 1, p. 62, *sq.*, and in A. D. 1680 recognized these highways by entries of lot descriptions on the proprietors' records. In A. D. 1710 the proprietors voted that some of these highways should be driftways. Some of these highways have for a very long time been obstructed by farm walls and buildings while parallel and equally convenient ways have been used in their stead.

In equity proceedings to enjoin the town council from opening these highways and laying out their lines :

*Held*, that the highways existed from the time of the allotment of land as shown by the records, that the public right was not extinguished by adverse possession and that the town council was entitled to reopen the highways as originally laid out or as varied by substitution where such is shown to be the fact.

*Held*, further, that the Plymouth records and the proprietors' records were sufficient evidence of dedication to public use as highways.

*Held*, further, that the proprietors' vote of A. D. 1710 changing the highways into driftways was, apart from its recognition of the ways as highways, of no effect.

In Rhode Island the doctrine *Nullum tempus occurrit regi* holds good. *Simmons* v. *Cornell*, 1 R. I. 519, affirmed and explained.

When, however, a new way substantially parallel with an old obstructed high-way and equally convenient has been used in place of the old highway for a long time :

*Held*, that the new way has by dedication and use been substituted for the former highway.

BILL IN EQUITY for an injunction.

*Providence, February* 4, 1893. STINESS, J. The complainant seeks to restrain the respondents, the town council of the town of Tiverton, from opening two alleged highways, which he claims are not highways but his own private land. The land in question was formerly within the territory held by the Plymouth Colony, until it was restored to Rhode Island, by order of the king, A. D. 1746, and within the portion known as the Puncatesett Purchase. The primary question is whether such highways have ever been established on the complainant's land. The respondents refer to " Records of the Town of Plymouth," where under the date of March

22, 1663,[1] is a descriptive list of the several lots at Puncatesett neck. In the list, several lots, included in the land in question, are referred to as bounded on highways; one of which is a highway between lots 1 and 2 at the south point which "goeth from this lott and share to a spring at the head of the Cove;" and the other is a highway that "goeth to the Cove." The proprietors' records[2] are also put in evidence, in which, under date of April 2, 1680, the same lots are similarly described with substantially the same references to the highways, some of the courses being given. Without repeating the numerous references to the highways which appear in these records, in bounding and describing the lots, it is evident that they show a setting off of lots, with ways, which are called highways, for access to such lots. The complainant urges that these records ought not to be received as evidence because there is no evidence as to the person or officer who made them; because they do not assume to be grants; because they do not appear to be declarations by any ancestor in title of the complainant; because they are not certified to by a public officer; because there is no legal evidence of the date when they were made and because there is no evidence which identifies the lots as the lands of the complainant.

It is hardly to be expected that the records and conveyancing of an infant colony will show the exactness and technicality which is required at the present time. Nevertheless, ancient public records produced from the proper custody and reputed to be genuine are admissible as evidence. This is true not only as to public corporate records but also as to records of companies of proprietors, under whose authority tracts of land have been been divided or disposed of. *Pitts* v. *Temple*, 2 Mass. 538; *Rehoboth* v. *Hunt*, 1 Pick. 224; *Williams* v. *Ingell*, 2 Metc. 83; *Inhabitants of Gloucester* v. *Gaffney*, 8

---

[1] These records have been published. "Records of the Town of Plymouth, vol. 1. Published by order of the town." Plymouth. Avery & Doten, 1889. The descriptive list referred to is on p. 62 *sq.* of vol. 1.

[2] The records of the Puncatesett proprietors are in the possession of Edward W. Howland of Little Compton, R. I. A transcript of them is in the town clerk's office of the town of Tiverton.

Allen, 11; *Hicks* v. *Fish*, 4 Mason, 310; *Simmons* v. *Cornell*, 1 R. I. 519. It is not possible to show, by witnesses, who made a record a century old, nor is it necessary. The presumption of genuineness attaches to that which has been received and handed down as genuine from the past; otherwise the compass of provable facts would lie only within the bounds of the memories of living witnesses. If a deed be taken to prove itself after thirty years much more should it be so with public and *quasi* public records. Assuming the genuineness of the records in question, the presumption equally arises that they were made at the time when they purport to have been made and by the proper officer. An attestation or certificate would add little to their weight for even this would have to prove itself as do the records. It is true the records do not show a formal vote or grant of lots to the persons named, nor a formal vote that the ways referred to should be public highways. Nevertheless, the records evidently disclose a division or partition of the land into lots; and the references to numbers of lots, to measures, to the laying out of the land, to courses, bounds and highways imply a survey and plat, and they clearly show a dedication for highways. As remarked by the court in *Adams* v. *Frothingham*, 3 Mass. 352, "Whether a mere vote of a proprietary at the present day, without any deed or location in pursuance of such vote, would pass lands from such proprietary to an individual, not a member of the corporation, is questionable; but it is well known that almost all titles, which have been derived from proprietors of townships, have nothing better to depend upon than a vote recorded in the proprietors' books; and where a possession was taken in conformity to the vote and transmitted by the grantee to his heirs or assigns, titles so acquired have been respected and maintained in our courts of law." We think the records referred to presuppose a vote, as otherwise no effect whatever could be given to the record, which is evidently that of an allotment of the lands. See *Simmons* v. *Cornell*, 1 R. I. 519, 524. In *Williams* v. *Ingell*, *supra*, the fact of a grant was presumed from references made to the land in question in other parts of the pro-

prietors' records, and, in the absence of proof of actual ouster or adverse possession, the right of possession was held to follow the right of property. A deed[1] from Edward Grey to Christopher Almy dated April 7, 1691, offered in evidence, refers to a highway leading down to Fogland Spring and such a deed is admissible as evidence of a dedication and of the fact that the way was considered to be a public highway. *Goelet v. Aldermen of Newport*, 14 R. I. 295. Reference is also made in the proprietors' records, under date of July 7, 1710, to the highway north of Job Almy's wall, "as it is now laid out and soe to the westward so far as it runneth," also to the way "that runneth from Fogland Spring to Puncetest creek." These are referred to as existing ways, and in *Simmons v. Cornell* such ways are presumed to be public and not private ways. Our attention is called to the fact that the vote at this meeting provided that the last named way shall "be drift ways to him and his heirs and assigns forever and he is to keep geats and bars sufficient for to pas and repas as in other Drift ways." The evidence up to this time being sufficient to establish the facts of dedication and acceptance of the highways in question, as well as could be expected after the lapse of about two centuries, and nothing appearing to rebut such a presumption, we are of the opinion that the ways were public highways. It follows therefore that such dedication, once complete, could not be revoked, at least so long as the public use continued, which use is recognized and provided for in the vote recited. *Union Co. v. Peckham*, 16 R. I. 64; *Rehoboth v. Hunt*, 1 Pick. 224. Duly exemplified copies of records of the court of General Sessions of the Peace for Bristol county, Massachusetts, have been submitted, from which it appears that in January, 1718, the highway was laid out down to Fogland Spring, it being, "understood that there is a Drift way from fogland spring down to the ferry according to the records of puncatest." This action of the court was taken because "the Proprietors of Tiverton did formerly have a way from the County Rhode at nomquid down to Fog-

---

[1] Recorded in Bristol County registry of deeds, Taunton, Mass. North Dist. Land Records, book 4, page 113.

land Spring," and many disputes had arisen about it.    This proceeding is chiefly significant in tending to show that the ways originally laid out had been accepted and claimed to be public highways, although the particular action at that time extended no further than Fogland Spring.    The complainant objects that these records do not identify the land here in dispute.    But this is not a proceeding for that purpose.    He seeks to enjoin the town council from laying out the lines of the highway, upon the ground that no such highway exists. The question for the court is simply whether there are or have been such highways upon the complainant's land and if so the definition of the lines will be made by the town council.    Upon this point we are satisfied that there were highways upon the complainant's land beyond Fogland Spring, and whether they now exist depends upon the main point urged by the complainant that they have been lost and the rights of the public have been extinguished by the adverse use of the land by the complainant and his predecessors in title.    It is admitted that the ways now claimed have been obstructed by gates and walls for the last hundred years or more; perhaps since the vote of the proprietors allowing Job Almy to take the land, maintaining gates and bars only for drift ways. The town relies upon the rule, *"Nullum tempus occurrit regi."*    We come then to the question whether title to the whole highway once dedicated to the public can be acquired by adverse possession, on the ground that the public have waived or abandoned the dedication.    This question has not been definitely passed upon in this State.    In other States there is much conflict.    In considering this point it must be borne in mind that there is a well settled distinction between a dedication to the public, with reference to which the municipality is merely a governmental agency, and a dedication to the municipality itself as a corporation.    Some of the cases cited by the complainant were of the latter class.    In *State* v. *Trask*, 6 Vt. 355, the dedication was for the use of a county for the purposes of a court house.    In *Rowan's Executors* v. *The Town of Portland*, 8 B. Mon. 232, the dedication was to a town for a ferry landing; the court holding, p. 259, that

as the dedication was not to the commonwealth, as a corporate being, the maxim "*Nullum tempus occurrit regi*" was inapplicable. In *Hall* v. *Mayor, &c., of Baltimore*, 56 Md. 187, the court found that there had been no dedication. *Mowry* v. *City of Providence*, 10 R. I. 52, was the case of a dedication of land to the use of the people of Providence, and not for the general public, against which title might be acquired by adverse possession. See also *City of Pella* v. *Scholte*, 24 Iowa, 283. *Commissioners* v. *Taylor*, 2 Bay, S. Car. 282; *Beardslee* v. *French*, 7 Conn. 125; and *Knight* v. *Heaton*, 22 Vt. 480, are highway cases which support the complainant's position. To these may be added *Gregory* v. *Knight*, 50 Mich. 61, and *City of Wheeling* v. *Campbell*, 12 W. Va. 36, where the whole subject is elaborately discussed; also *City of Fort Smith* v. *McKibben*, 41 Ark. 45. The latter case is annotated in 5 Amer. & Eng. Corp. Cases, 453, 458, and in 48 Amer. Reports, 19, 24, with collections of cases on both sides of the question. The contrary doctrine, that no right by adverse possession can be gained against the public, is held in Pennsylvania, New Jersey, Louisiana, Indiana, Mississippi, California, New York, Tennessee and Iowa, as appears in the numerous cases cited in the notes above referred to and in 2 Dillon on Municip. Corp. 4th ed. §§ 666–674 inclusive; Elliott on Roads & Streets, 666, 667.

The grounds upon which the latter class of cases rests are variously stated; as, that an obstruction is a nuisance and no nuisance can ripen into a right; that individuals may reasonably be held to a limited period to enforce their rights against adverse occupants, because they have interest sufficient to make them vigilant; while in public rights of property, each individual feels but a slight interest and will tolerate a manifest encroachment rather than seek a dispute to set it right; that public policy requires the preservation of public rights and that a municipality cannot by permissive neglect invest an intruder with title to a public highway. These reasons are very cogent and in our opinion outweigh the authorities which are opposed to them. The case of *Simmons* v. *Cornell, supra,* held this doctrine to the extent of denying the

right to gain title to a highway by encroachment; but it did not pass upon the question of an exclusive possession of the whole way. We are unable to see upon what sound principle the right can be denied in one case and not in the other. True it may be said that an entire possession of the way furnishes a presumption of abandonment which does not apply to a partial possession; but it may also be said that if a public right cannot be extinguished in the whole lay out, when enough is left unencumbered for convenient travel, the reason is stronger that the right cannot be extinguished altogether. The general doctrine of *Simmons* v. *Cornell* has never before been questioned in this State.

Judge Dillon says, § 674, *supra*, that a municipal corporation "does not own and cannot alien public streets or places and no mere *laches* on its part or on that of its officers can defeat the right of the public thereto; yet there may grow up, in consequence, private rights of more persuasive force in the particular case than those of the public." This sentence has been criticised, (see *City of Fort Smith* v. *McKibben,* and *City of Wheeling* v. *Campbell, supra,*) as a compromise between the authorities which sustain the right of adverse possession on one side and the contrary doctrine which he so stoutly maintains in his text book, on the other. We think there is good sense in the suggestion and one phase of the case illustrates its application. It is shown that the highway in question if now relaid as it was originally, will go through the complainant's walls, buildings, orchard and cultivated lands, to the great injury of his farm; while, in fact, another way, substantially parallel, has been used instead of the original one, outside of these obstructions. Without yielding the doctrine that the public cannot be ousted of its right by adverse possession, it is not at all inconsistent to hold that, under a new dedication, another way equally convenient, has been substituted, by general and long continued acquiescence, for the original way. The right of the public to a highway, without substantial detriment, is preserved, while its particular location may have been varied by common consent. The old right is not extinguished, although its exercise may be

transferred to the new way. Judge Dillon puts it upon the ground of an estoppel *in pais*, but the principle of substitution appears to us to be a stronger ground. See *Hamilton* v. *White*, 5 N. Y. 9; *Larned* v. *Larned*, 11 Metc. 421; *Lowell* v. *Smith*, C. B. N. S. 120.

It is not for us, in this case, to define the line of the highway, but simply to say whether the town of Tiverton should be enjoined from defining it. Our conclusion is that highways existed, substantially as claimed by the respondents, from the time of the allotment of land, as shown by the records; that the public right is not extinguished by adverse possession, as claimed by the complainants; that the town of Tiverton is entitled to reopen these highways, as originally laid out, or as varied by substitution where that fact appears.

*Samuel R. Honey*, for complainant.

*William P. Sheffield & Arnold Green*, for respondents.