MOUNT HOPE BRIDGE COMPANY *vs.* PUBLIC UTILITIES COMMISSION.

FEBRUARY 4, 1931.

PRESENT: Stearns, C. J., Rathbun, Sweeney, and Murdock, JJ.

STEARNS, C. J. The Mount Hope Bridge Co. was incorporated by an act of the General Assembly, approved April 14, 1927, entitled, "An Act to Incorporate Mount Hope Bridge Company and to Authorize said Company to Construct, Maintain and Operate a Bridge between the Towns of Bristol and Portsmouth."

Section 5 of the act is as follows: "The Company shall file all its rates, tolls and charges with the Public Utilities Commission in the same manner provided for public utilities under Chapter 253 of the General Laws. The Public Utilities Commission shall have the jurisdiction over such rates, tolls and charges as provided under said chapter, all the provisions of which shall be applicable to the Company.

"In reviewing any rate, toll or charge under said act, the Commission shall approve rates, tolls or charges adequate to pay a net annual return to the Company equal to at least nine per cent each year during the first ten years of operation and eight per cent each year thereafter, of the original cost (plus additions thereto) of the property of the Company; such original cost shall be determined by the Public Utilities Commission within three months after completion of the

bridge and shall include the cost of the property, interest during construction and not over ten per cent of such total for organization expenses and cost of financing. 'Net annual return' shall mean net annual income after the payment of all proper operating expenses and taxes, and after adequate and reasonable provision for depreciation, obsolescence and other proper charges." ·

Bonds and debentures to secure funds for construction were issued and sold and the proceeds thereof were received by the Company in December, 1927. After some delay, due to a mistake in the method of steel construction, the bridge was completed and opened to traffic in December, 1929. The Public Utilities Commission, in compliance with the requirement of the act, after a public hearing, on March 19, 1930 determined the original cost of the property of the Company to be $3,897,820.71.

The facts are undisputed. The Company paid upon its bonds and debentures in the period while the bridge was under construction, interest to the amount of $552,500.00. During the same period the Company received interest upon unexpended balances of funds on hand to the amount of $155,460.19. In making its determination of the original cost the Commission deducted from the amount of interest paid the amount of interest received by the Company, and allowed the balance $397,039.81, as the interest during construction. The Company being aggrieved by the order of the Commission is here on appeal therefrom. G. L. 1923, C. 253, S. 34.

The only question before us is with respect to this deduction made in the item of interest during construction.

The Company claims the right to include in the original cost all payments for interest during the period of construction, without any deduction therefrom for interest received on balances on hand.

In the valuation of public utilities for rate-making purposes, it is uniformly held that a part of the cost of the property devoted to public service is the interest on the

money necessarily invested during the period of construction. The length of time for which this interest should be computed has often been a matter of controversy and different methods of computing the time and the rate of such interest have been adopted in different jurisdictions. The rule, however, is general and well settled that the amount paid by the utility for interest during construction is not the measure for the determination of the amount of interest to be allowed as a part of the cost. In Whitten, Valuation of Public Service Corporations, Vol. 2, ¶585, the author says the better rule seems to be that there is no room for profit prior to the time when service begins, and therefore that interest during construction should be figured on the basis of the minimum necessary cost of money to the utility during the construction period. The meaning of the phrase "interest during construction" in the act of incorporation is to be determined by consideration of the phrase together with the whole act. The Company by the act is made a public utility.

The general authority of the Commission over the rates, tolls and charges of public utilities is limited in the case of this Company by the provision in the act which requires the Commission to approve rates and tolls adequate to pay a net annual return to the Company of at least 9% each year for the first ten years of operation and 8% each year thereafter. The act also provides that the bridge, its approaches and ancillary structures are exempt from taxation; also that the Company is not required to pay to the State any compensation for any land or interest or estates therein taken or acquired by the Company for the construction, maintenance and operation of such bridge.

Section 2 of the act provides that the location, design, plans, and contracts for construction of the bridge are to be subject to the approval of the State Board of Public Roads. Section 6 provides that ten years from the opening of the bridge to public use, or at the end of each five year period thereafter and not otherwise, the State may purchase the

tangible personal property and real estate of the Company at a price equal to the original cost to the date of purchase of such property and any additions thereto, less adequate depreciation, plus the amount by which the aggregate sum of the net annual returns received by the Company shall be less than the aggregate sum of the net annual returns specified in Section 5, provided that said amount shall not, in any event, exceed 15% of said original cost; that on January 1, 1970, said tangible personal property and real estate, unless theretofore acquired by the State, shall become the property of the State without any payment therefor and free from any encumbrances. Without reference to other parts of the act of incorporation, the intention of the act is plain. The original cost is made the basis of the purchase price if the State exercises its option; also the original cost is to be the fixed basis for the rate of tolls. The three items included in the original cost are the cost of the property, interest during construction and a fixed limit, on a percentage basis, for organization and financial expenses. To avoid any uncertainty or controversy later because of changed conditions, the amount of the original cost is required to be settled within three months after completion of the bridge. By its control of the location, the design and the contracts for construction the General Assembly clearly intended to regulate and limit the amount of the expense for construction. The act of incorporation neither contemplates nor provides for the making of any profit or income by the Company prior to the opening of the bridge. Income is to be derived from tolls and rates and is to begin on the opening of the bridge. The allowance of the interest charge claimed would ensure to the Company for forty years an income from tolls determined not on actual expense but in part on expense plus profits. The disallowance of income from interest takes no property from the Company. It does reduce the maximum amount for organization and financial expenses which is to be included in the total cost. The Company, however, retains the interest and the profit thus gained by the loans of its funds.

The deduction made of the amount of interest received on funds on hand was correct and in accordance with the provisions of the act.

The appeal of the petitioner is denied and dismissed and the order appealed from is sustained.

A form of decree in accordance with the provisions of Gen. Laws, 1923, Cap. 253, Sec. 35 may be presented.

*Greenough, Lyman & Cross, William B. Greenough, Edgar J. Lanpher*, for Bridge Co.

*Benjamin M. McLyman, Attorney General, Sigmund W. Fischer, Jr. Asst. Atty G.* for respondent commission.