## MARIE G. BOLAN *v.* AVALON FARMS PROPERTY OWNERS ASSOCIATION, INC.
## (SC 16066)

Callahan, C. J., and Borden, Berdon, Norcott, Katz, Palmer and McDonald, Js.

---

Argued May 25—officially released August 10, 1999

*John W. Pickard*, for the appellant (plaintiff).

*Zbigniew S. Rozbicki*, for the appellee (defendant).

*Opinion*

CALLAHAN, C. J. The dispositive issue in this appeal is whether Connecticut should continue to adhere to the unity of title doctrine. See *Curtin* v. *Franchetti*, 156 Conn. 387, 389, 242 A.2d 725 (1968). We conclude that it should not. Accordingly, we reverse the judgment

of the trial court, which was compelled by its justified reliance on the doctrine as stated in *Curtin*.

The following facts and procedural history are undisputed. The plaintiff, Marie G. Bolan, is the owner of approximately 161 acres of undeveloped real estate located in Litchfield. The plaintiff's land does not abut any public highway and is completely landlocked. The defendant, Avalon Farms Property Owners Association, Inc., is the owner of land that is situated immediately south of, and adjacent to, the plaintiff's land.

From 1936 to 1939, Isabel Curtis was the owner of a large tract of land that included the properties that now belong to the plaintiff and the defendant. In 1939, Isabel Curtis divided her tract into two separate parcels. The boundary line between the two was the centerline of Old Mount Tom Road, a road that in 1927 had been discontinued for public use by the town of Litchfield. Isabel Curtis retained ownership of the tract north of the boundary line, and transferred the tract south of the line to her son, Charles Curtis. At that time, both tracts abutted public highways.[1]

The plaintiff's land is part of the tract of land that was retained by Isabel Curtis in 1939. In 1940, Isabel Curtis transferred the tract to Marion Heiser.[2] Between 1940 and 1955, Heiser divided the property into parcels and sold every parcel that abutted a public highway, leaving herself with six adjacent parcels that had no access to a public highway and were completely landlocked. In 1958, Heiser transferred five of those six landlocked parcels to her son, Charles Phinny. Phinny acquired the sixth of Heiser's landlocked parcels from

---

[1] The deed by which Isabel Curtis transferred the tract south of the dividing line to Charles Curtis did not grant Isabel Curtis any easement appurtenant over that tract.

[2] The deed by which Isabel Curtis transferred the tract north of the dividing line to Heiser also makes no mention of any easement over the property that then was owned by Charles Curtis.

Heiser's estate in 1970. Upon Phinny's death in 1985, his estate transferred two of the six landlocked parcels to the plaintiff's husband, Thomas A. Bolan. Less than one month later, Thomas A. Bolan transferred both parcels, which abut the defendant's land, to the plaintiff.

The defendant's land is part of the tract that Isabel Curtis transferred to Charles Curtis in 1939. Upon acquiring the property, Charles Curtis gave it the name "Avalon Farms." Thereafter, the property was transferred several times before Pasquale DiNardo, Trustee, (DiNardo) acquired it on January 5, 1978. DiNardo acquired the property with the intention of developing it, and, on January 24, 1978, he filed a set of subdivision maps for the Avalon Farms Subdivision (subdivision) with the town clerk of Litchfield.[3] The subdivision maps, which showed the entire subdivision, included areas that were designated as "open space conservation" and "open space."

In 1979, DiNardo transferred a portion of the subdivision to Gold Key Builders, Inc. (Gold Key).[4] The property transferred to Gold Key included all roadways, several building lots, and the areas shown as "open space conservation" and "open space" on the subdivision maps. In 1988, after further development of the subdivision, DiNardo and Gold Key executed deeds transferring to the defendant their respective interests in the "open space conservation" and "open space" areas of the subdivision.[5]

The deeds by which the defendant acquired its property from DiNardo and Gold Key describe the lands

---

[3] The subdivision maps, which had been prepared for DiNardo's predecessor in title, previously had been approved by the Litchfield planning and zoning commission on November 21, 1977.

[4] DiNardo was the president of Gold Key.

[5] The defendant acquired its property by quitclaim deed from DiNardo on January 6, 1988, and by warranty deed from Gold Key on January 6, 1988. The provisions of those deeds that are relevant to this appeal are identical.

conveyed as those "designated and shown as 'OPEN SPACE CONSERVATION' and 'OPEN SPACE' areas on a certain set of subdivision maps (including cover and sheets 1 through 13, inclusive), entitled 'Avalon Farms, Route 202, Litchfield, Connecticut August 1977, Prepared by Empire Associates, Inc., Plainville, Connecticut,' which subdivision maps are on file in the offices of the Morris and Litchfield Town Clerk[s] and to which subdivision maps reference is herein made for a more particular description of the same." The set of subdivision maps referred to in the defendant's deeds are those that DiNardo filed with the town clerk of Litchfield in 1978. Sheet 13 of those subdivision maps, which is explicitly referred to in the defendant's deeds, describes the boundary between the plaintiff's property and the defendant's property as the "CENTERLINE OF [THE] OLD ROAD." Sheet 13 also sets forth the following legend in the portion of the defendant's property parallel and immediately adjacent to that boundary: "THIS AREA RESERVED FOR OPEN SPACE & ACCESS AREA FOR LANDLOCKED ABUTTERS." At the time that the subdivision maps were filed, Phinny was the owner of the landlocked property that now is owned by the plaintiff.

In 1994, the plaintiff brought the present action against the defendant, seeking a determination that: (1) the deeds by which the defendant had acquired its property granted Phinny an easement appurtenant over the defendant's property for purposes of access to a public highway; and (2) the plaintiff, as Phinny's successor in interest, is the owner of that easement. Specifically, the plaintiff claimed that the defendant's deeds and the subdivision maps referred to therein manifested an intention by DiNardo and Gold Key to create an easement over the designated access area in favor of Phinny, a landlocked abutter. The trial court concluded that DiNardo and Gold Key had intended to grant Phinny

an easement appurtenant over the defendant's land. Appropriately relying on this court's opinion in *Curtin* v. *Franchetti*, supra, 156 Conn. 389, however, the court concluded that the unity of title doctrine precluded it from giving effect to such intent. Accordingly, the trial court rendered judgment for the defendant.

The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 65-1, and General Statutes § 51-199 (c). We now abandon the unity of title doctrine, and reverse the trial court's judgment.

On appeal, the plaintiff claims, inter alia, that: (1) the deeds by which the defendant acquired its land manifest an intention to create an access easement over the defendant's property in favor of property owned by landlocked abutters; and (2) because the unity of title doctrine operates to frustrate that intent, the doctrine should be abrogated.[6] We agree with both of these claims.

"The principles governing the construction of instruments of conveyance are well established. In construing a deed, a court must consider the language and terms of the instrument as a whole. . . . *Our basic rule of construction is that recognition will be given to the expressed intention of the parties to a deed or other conveyance*, and that it shall, if possible, be so construed as to effectuate the intent of the parties. . . . In arriving at the intent expressed . . . in the language used, however, it is always admissible to consider the situation of the parties and the circumstances connected

---

[6] On appeal, the defendant claims that the plaintiff's complaint lacks sufficient specificity. Because this claim was not raised at trial, we do not consider it. "The appeal process should not be utilized to seek to correct pleading deficiencies the party complaining clearly could have remedied under our rules in the trial court." (Internal quotation marks omitted.) *Tedesco* v. *Stamford*, 215 Conn. 450, 458, 576 A.2d 1273 (1990).

with the transaction, and every part of the writing should be considered with the help of that evidence. . . . The construction of a deed in order to ascertain the intent expressed in the deed presents a question of law and requires consideration of all its relevant provisions in light of the surrounding circumstances." (Emphasis added; internal quotation marks omitted.) *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.*, 239 Conn. 769, 780, 687 A.2d 1270 (1997).

The deeds by which the defendant acquired its property provide that the lands conveyed to the defendant were those "designated and shown as 'OPEN SPACE CONSERVATION' and 'OPEN SPACE' areas on a certain set of subdivision maps (including cover and sheets 1 through 13, inclusive) . . . to which subdivision maps reference is herein made for a more particular description of the same." Thus, the deeds explicitly provide that the defendant's rights in the "open space conservation" and "open space" land would be subject to all restrictions more particularly set forth in the subdivision maps. The effect of the reference to the subdivision maps was to incorporate those maps into the deed. General Statutes § 7-31.[7] "This reference to the map in the deed, '[f]or a more particular description,' incorporates [the map] into the deed as fully and effectually as if copied therein." *Bankers Trust Co.* v. *Zoning Board of Appeals*, 165 Conn. 624, 631, 345 A.2d 544 (1974). "*[T]he*

[7] General Statutes § 7-31 provides in relevant part: "When any person having an interest in land has caused it to be surveyed and plotted or laid out into lots and projected highways, and a map made, which map shall bear the seal of the surveyor and a certification that it is substantially correct to the degree of accuracy shown thereon, and when such projected highways have been approved by the municipal authorities empowered to approve the layout of highways, the map may be received and placed on file in the office of the clerk of the town in which such land is situated and *shall thereupon be deemed a part of the deeds referring thereto* . . . ." (Emphasis added.)

*identifying or explanatory features contained in maps referred to in a deed become part of the deed,* and so are entitled to consideration in interpreting the deed as though they were expressly recited therein." (Emphasis added.) *Whittaker* v. *Zoning Board of Appeals,* 179 Conn. 650, 659 n.8, 427 A.2d 1346 (1980). Thus, the effect of incorporation of the subdivision maps into the deeds was to include in the deeds any easement memorialized on those maps. Id.

Sheet 13 of the subdivision maps contains a legend that provides that the area immediately south of, and adjacent to, what is now the plaintiff's landlocked property is "RESERVED FOR . . . ACCESS AREA FOR LANDLOCKED ABUTTERS." The term "reserved" is a term of art generally associated with the creation of an easement; see *Knowlton* v. *New York, N.H. & H. R. Co.,* 72 Conn. 188, 192–93, 44 A. 8 (1899); *Barnes* v. *Burt,* 38 Conn. 541, 542 (1871); 25 Am. Jur. 2d, Easements and Licenses §§ 19, 82 (1996); and the term "easement of access" is used to refer to an abutting landowner's " 'right of ingress, egress, and regress . . . .' " *Kachele* v. *Bridgeport Hydraulic Co.,* 109 Conn. 151, 153, 145 A. 756 (1929). Thus, the language of the legend on sheet 13 indicates an intention to create an access easement. Finally, the term "landlocked abutters" in that legend identifies the land to be benefited by the access easement, namely, the landlocked property that now is owned by the plaintiff. See *Branch* v. *Occhionero,* 239 Conn. 199, 204, 681 A.2d 306 (1996) (creation of easement requires identification of property to be benefited). As previously noted, the determination of the intent expressed in a deed presents a question of law. *Lakeview Associates* v. *Woodlake Master Condominium Assn., Inc.,* supra, 239 Conn. 780. We conclude, therefore, that, as a matter of law, the deeds and the incorporated subdivision maps by which the defendant acquired its property manifest an intention by DiNardo

and Gold Key to create an access easement over that property in favor of the owner of the landlocked property that now belongs to the plaintiff.

The trial court concluded, however, that the unity of title doctrine precluded it from recognizing such an easement. The unity of title doctrine provides that "[n]o right of way appurtenant can be created without a dominant as well as a servient estate. . . . The dominant estate enjoys the benefit of the way, and the servient estate bears the burden. The way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." (Citation omitted.) *Curtin* v. *Franchetti, supra,* 156 Conn. 389. The doctrine is based on the common-law notion that, because a stranger to the deed has no interest in the property conveyed, he has no interest to be excepted from the grant, and none from which a reservation could be carved. *Aszmus* v. *Nelson,* 743 P.2d 377, 380 (Alaska 1987); *Willard* v. *First Church of Christ, Scientist,* 7 Cal. 3d 473, 475, 498 P.2d 987, 102 Cal. Rptr. 739 (1972); annot., 88 A.L.R.2d 1199, 1202 (1963).

The unity of title doctrine was adopted by this court in *Curtin* v. *Franchetti, supra,* 156 Conn. 387. In *Curtin,* the plaintiff claimed that she owned a right of way over the defendant's property. Both parties traced their chains of title to a common grantor. The trial court determined that the grantor had reserved a right of way over the defendant's property for the benefit of the plaintiff's property, and rendered judgment for the plaintiff. On appeal, we noted that "[t]he way can become legally attached to the dominant estate only if the same person has unity of title to both the way and the dominant estate." Id., 389. Concluding that the plaintiff had failed to establish that the common grantor had owned her property at the time he had reserved an easement over the defendant's property, we reversed

the judgment of the trial court. Id., 391; see *Stankiewicz v. Miami Beach Assn., Inc.*, 191 Conn. 165, 170, 464 A.2d 26 (1983) (approving doctrine). Thus, *Curtin* requires that an easement be created by a person who has title to both the easement area and the property to be served by the easement. *Curtin v. Franchetti*, supra, 389. When the defendant in the present case acquired its property, DiNardo and Gold Key were the owners of the area of the property intended to serve as an easement; they were not, however, the owners of the land that the easement was intended to serve, i.e., the plaintiff's property. Consequently, continued adherence to the unity of title doctrine that we adopted in *Curtin* would preclude us from recognizing that easement. "While we [have] recognized that several commentators view the unity of title doctrine as an obsolete vestige of feudalism that frustrates the intention of the grantor; H. Harris, 'Reservations in Favor of Strangers to the Title,' 6 Okla. L. Rev. 127 (1953); 2 American Law of Property (Casner Ed. 1952) § 8.29; 5 Restatement, Property § 472, comment [a]; we [have] decided to defer reconsideration of the subject until we are confronted with a case in which the grantor's intention to create an interest that would violate the rule is 'reasonably clear.' *Ozyck v. D'Atri*, [206 Conn. 473, 479, 538 A.2d 697 (1988)]." *Carbone v. Vigliotti*, 222 Conn. 216, 223–24, 610 A.2d 565 (1992); *Branch v. Occhionero*, supra, 239 Conn. 202 n.4; see *Abington Ltd. Partnership v. Heublein*, 246 Conn. 815, 829, 717 A.2d 1232 (1998). This is such a case. We can discern no reason to adhere to the unity of title doctrine and ignore the expressed intention of the parties to the defendant's deeds. We conclude, therefore, that the unity of title doctrine should be abandoned and that the intent of the deed creating an easement should be effectuated even if no unity of title exists between the servient estate and the

dominant estate the easement is intended to serve.[8] To the extent that *Curtin* approves the unity of title doctrine, it is hereby overruled.

Our conclusion, moreover, finds support in the recently approved provisions of the Restatement (Third) of Property, Servitudes,[9] and in the decisions of many other states. Restatement (Third), Property, Servitudes, Tentative Draft No. 1 (1989, officially adopted 1998) § 2.2 (conveyance creates servitude if intended to do so; intent may be express or implied);[10] id., § 2.6 (servitude may be created in favor of persons not parties to transaction);[11] id., § 2.6 comment (e) (single document may convey easement and burdened

[8] We appreciate the defendant's observation that a purchaser of the dominant estate—the estate benefited by the easement—may have problems discovering such easements by way of a title search. We nevertheless favor abandonment of the rule. We note, moreover, that a purchaser of the servient estate—the estate burdened by the easement—will have sufficient notice of such easements because the language of its deed and the surrounding circumstances will manifest such an intent.

[9] The Restatement (Third) of Property, Servitudes, was adopted in its entirety, subject only to editorial modifications, by the American Law Institute at its annual meeting on May 12, 1998. See 66 U.S.L.W. 2724–26 (May 26, 1998).

[10] Restatement (Third), Property, Servitudes, Tentative Draft No. 1 (1989, officially adopted 1998) § 2.2 provides: "A contract or conveyance creates a servitude if it is intended to do so, and if it is otherwise effective to create a servitude. The intent to create a servitude may be express or implied. No particular verbal formula is required."

See Restatement (Third), Property, Servitudes, Tentative Draft No. 1 (1989, officially adopted 1998) § 2.6, comment (b), which provides: "The underlying rationale of the rules stated in this section is that the intent of the parties to create servitude benefits in others should be given effect. The old rules . . . requiring separate conveyances for the creation of a servitude and simultaneous transfer of the burdened estate, were designed to serve purposes that are now obscure. They have little modern utility and trap the poorly represented. They frustrate intent and, to the extent they retain any force, should be discarded."

[11] Restatement (Third), Property, Servitudes, Tentative Draft No. 1 (1989, officially adopted 1998) § 2.6 provides: "(a) The beneficiaries of a servitude are the persons or the holders of the estates intended to be benefited by the parties to the transaction.

"(b) The benefit of a servitude may be held personally, in gross, or as an

estate);[12] see *Aszmus* v. *Nelson,* supra, 743 P.2d 377 (rejecting unity of title doctrine); *Willard* v. *First Church of Christ, Scientist,* supra, 7 Cal. 3d 473 (same); *Katkish* v. *Pearce,* 490 A.2d 626 (D.C. App. 1985) (same); *Nelson* v. *Parker,* 687 N.E.2d 187 (Ind. 1997) (same); *Townsend* v. *Cable,* 378 S.W.2d 806 (Ky. 1964) (same); *Borough of Wildwood Crest* v. *Smith,* 210 N.J. Super. 127, 509 A.2d 252 (1986), cert. denied, 107 N.J. 51, 526 A.2d 139 (1986) (same); *Malloy* v. *Boettcher,* 334 N.W.2d 8 (N.D. 1983) (same); *Garza* v. *Grayson,* 255 Or. 413, 467 P.2d 960 (1970) (same); *Simpson* v. *Kistler Investment Co.,* 713 P.2d 751 (Wyo. 1986) (same); see also *Uhes* v. *Blake,* 892 P.2d 439 (Colo. App. 1995) (effectuating intent of grantor); *Medhus* v. *Dutter,* 184 Mont. 437, 603 P.2d 669 (1979) (same); *Zurn Industries* v. *Lawyers Title Ins. Corp.,* 33 Ohio App. 3d 59, 514 N.E.2d 447 (1986) (same); *Mott* v. *Stanlake,* 63 Mich. App. 440, 234 N.W.2d 667 (1975) (same).[13]

The deeds by which the defendant acquired its land from DiNardo and Gold Key created an easement over that land in favor of the owner of what is now the plaintiff's landlocked abutting parcel. Because of that legal conclusion, and because of the abandonment of

appurtenance to an estate or other interest in land.

"(c) The benefit of a servitude may be created in favor of persons who are not parties to the transaction, and in favor of the holders of estates, or other interests in land, that are not owned by parties to the transaction."

[12] Restatement (Third), Property, Servitudes, Tentative Draft No. 1 (1989, officially adopted 1998) § 2.6, comment (e) provides in relevant part: "A servitude benefiting a third party may be created in a document that simultaneously conveys the burdened estate to another."

[13] See generally 4 R. Powell, Real Property (1997) § 34.04 (recognizing that intent of grantor should be given effect); S. French, "Servitudes Reform and the New Restatement of Property: Creation Doctrines and Structural Simplification," 73 Cornell L. Rev. 928, 937 (1988) (endorsing creation of easement in third party); R. Cunningham, The Law of Property (2d Ed. 1993) § 8.3, pp. 444–45, § 10.11, p. 719 (recognizing trend discrediting unity of title doctrine); 23 Am. Jur. 2d, Deeds § 84 (1983) (acknowledging that growing number of courts abandoning common-law rule).

the unity of title doctrine that was the underpinning of the trial court's judgment, the new trial that is necessitated should be limited to the extent and nature of the plaintiff's easement, which obviously the trial court did not determine.

The judgment is reversed, and the case is remanded for a new trial limited to a determination of the extent and nature of the plaintiff's easement.

In this opinion the other justices concurred.