Gordon F.B. ONDIS

v.

CITY OF WOONSOCKET, by and
through its TREASURER
Carol TOUZIN.

No. 2004–285–Appeal.

Supreme Court of Rhode Island.

Nov. 9, 2007.

Nicholas Gorham, Esq., North Scituate, for Plaintiff.

James A. Hall, Esq., Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, and ROBINSON, JJ.

## OPINION

Justice FLAHERTY, for the Court.

"Few things are as certain as death, taxes and the legal entanglement that follows a sale of landlocked real estate." *Bob Daniels and Sons v. Weaver,* 106 Idaho 535, 681 P.2d 1010, 1013 (Ct.App.1984). In this appeal from a judgment entered by the Superior Court in an action for declaratory and injunctive relief, the plaintiff Gordon Ondis claims an easement over property in North Smithfield, owned by the defendant City of Woonsocket.[1] The plaintiff, whose property is landlocked, seeks to enjoin the city from interfering with his use of a disputed right-of-way. The plaintiff argues that he had a deeded easement over the city's property, even though that right-of-way was literally flooded more than 100 years ago when the city's Reservoir No. 3 was created.[2] The plaintiff argues in the alternative that an easement by necessity arose at the time of the flooding or that another right-of-way was substituted for the deeded right-of-way that was sunk under a century's

drinking water. Thus, an ancient right-of-way, after 100 years of quiet submersion at the bottom of the Woonsocket Reservoir, resurfaces to test Rhode Island waters on the law of easements in the 21st century. For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

## I

### Factual Background

Gordon Ondis purchased a thirty-acre parcel of undeveloped real estate in North Smithfield in 1999. Surrounding this land is a reservoir, owned by the City of Woonsocket, that serves the drinking-water needs of local residents. Ondis purchased this land (the woodlot) from his attorney and good friend, who notified him of potential issues surrounding access to the property. However, plaintiff decided to take the risk, and he paid only $700 an acre for the woodlot.

At trial, Ondis testified that before purchasing the woodlot he observed locals use a fire road to get access to the property.[3] He also testified that he observed his predecessor in interest, Mr. Girourd, bring guests to the undeveloped land. Mr. Girourd used the fire road to occasionally bring school children to the woodlot, traveling the road by bus. Ondis further testified that, as a young man, he himself also

1. General Laws 1956 § 9–30–1 of the Uniform Declaratory Judgments Act, provides: "The superior or family court upon petition, following such procedure as the court by general or special rules may prescribe, shall have power to declare rights, status, and other legal relations whether or not further relief is or could be claimed. No action or proceeding shall be open to objection on the ground that a declaratory judgment or decree is prayed for. The declaration may be either affirmative or negative in form

and effect; and such declarations shall have the force and effect of a final judgment or decree."

2. "An Act to Increase the Efficiency of the Woonsocket Water Works," was enacted by P.L. 1894, ch. 1349 and was later amended by P.L. 1896, ch. 431.

3. This road also is referred to as "the access road" or "the fire lane" in the record.

used the fire road for fishing and hunting purposes. Ondis' testimony constituted the main evidence of overall usage of the fire road, and it revealed that the use both was sporadic and included people who did not own the woodlot, such as the youthful plaintiff himself.

Ondis testified that he intended to develop two or three residential lots on the woodlot. However, once the city discovered that it owned the fire road, it blocked it and stymied plaintiff from getting access to his newly acquired property. After Ondis was denied access to his property, he filed suit against the city, asking the Superior Court for a declaration that the right-of-way existed and for an injunction against defendant's interference with plaintiff's use of the disputed way. Eventually, the case was tried before a justice of the Superior Court, sitting without a jury.

At the conclusion of the trial, the Court found that at some point in the late 1800s, all the land in question belonged to a man named Obed Paine, who owned a large contiguous parcel that encompassed both the fire road and the woodlot. In 1876, Paine conveyed a section of the large parcel to Lydia Haswell and others. The deed of conveyance declares:

> "Reserving to the Grantor forever a free and undisturbed right-of-way over several pasture paths leading from the said Grantor's reserved woodland to Sayles Hill Road. Also giving to the Grantee the right-of-way over grantor's Harris Lot Path towards Rocky Hill Road."

It is undisputed that Ondis' parcel is the "reserved woodland" mentioned in the Paine–Haswell deed. The Superior Court also made several critical findings of fact. The Court found that (1) plaintiff's predecessors in title had access via several pasture paths leading from plaintiff's property toward Sayles Hill Road, (2) that access was destroyed when the reservoir was created more than 100 years ago, and (3) plaintiff purchased the property in 1999.

The record also reveals that the City of Woonsocket acquired the land surrounding the woodlot in connection with the creation of its Reservoir No. 3 in the late 19th century. The Superior Court found that the Harris Lot Path and the pasture paths that are referred to in the deed were submerged under twenty feet of water in the reservoir early in the last century.

At trial, plaintiff argued that an easement arose by necessity as soon as the city destroyed the deeded easement. The plaintiff also argued that the ancient right-of-way still existed because an easement on the fire road had been substituted for the deeded easement at the time of the "great flooding" of Reservoir No. 3. In response, the city argued that plaintiff failed to introduce sufficient facts to meet the heavy burden required to prove an easement by substitution. And, as a matter of law it argued that his theory of easement by necessity was fatally flawed because of the absence of unity of title at the time the original easement was destroyed, and also because an express easement existed at the time the original parcel was severed.

At the close of plaintiff's case, the city filed a motion under Rule 52(c) of the Superior Court Rules of Civil Procedure for a judgment on partial findings.[4]  It

---

4.  Rule 52(c) of the Superior Court Rules of Civil Procedure states in relevant part: *"Judgment on Partial Findings.* If during a trial without a jury a party has been fully heard on an issue and the court finds against the party on that issue, the court may enter judgment as a matter of law against that party with respect to a claim or defense that cannot under the controlling law be maintained or defeated without a favorable finding on that

argued that plaintiff's claims were time-barred by the relevant statute of limitations and also that his claim to title was extinguished by the Marketable Record Title Act (MRTA).[5] The trial justice reserved judgment on the city's motion until the end of trial.

At the conclusion of all the evidence, the trial justice proceeded to decide the case on the merits before he ruled on the reserved procedural motions. He found that plaintiff did not meet the burden of proof necessary to establish an easement by substitution. He also found that prior decisions of this Court precluded a finding of easement by necessity. Specifically, the trial justice ruled that the grantor reserved an express easement at the time of severance, and the unity of title doctrine precluded a finding of an easement at the time of the flooding instead. After thus holding on the merits of the controversy, the Court revisited the Rule 52(c) motion, and ruled that both the statute of limitations and the MRTA barred plaintiff's claims to a right-of-way in the first instance.[6]

Because the Superior Court's findings are not clearly wrong with respect to the issue of easement by substitution, and because we decline plaintiff's invitation to

reverse many years of common law precedent in the law of easements with regard to the easement by necessity issue, we affirm.

## II

### Standard of Review

■ "A judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." *Town of West Greenwich v. A. Cardi Realty Assoc.*, 786 A.2d 354, 357–58 (R.I.2001) (citing *Forte Bros., Inc. v. Ronald M. Ash & Assocs., Inc.*, 612 A.2d 717, 721 (R.I.1992)). Otherwise, we are deferential to the trial justice's findings of fact and give them great weight. *Barone v. Cotroneo*, 711 A.2d 648, 649 (R.I.1998) (mem.). However, we will review pure questions of law that have been presented on appeal on a *de novo* basis. *Manchester v. Pereira*, 926 A.2d 1005, 1011 (R.I.2007) (citing *Dellagrotta v. Dellagrotta*, 873 A.2d 101, 109 (R.I.2005); *R.I. Depositors Economic Prot. Corp. v. Bowen Court Assocs.*, 763 A.2d 1005, 1007 (R.I.2001)).

issue, or the court may decline to render any judgment until the close of all the evidence."

5. General Laws 1956 § 34–13.1–2 provides:
"Any person having legal capacity to own land in this state, who has an unbroken chain of title to any interest in land for forty (40) years or more, shall be deemed to have a marketable record title to that interest, subject only to the matters stated in § 34–13.1–3. A person has such an unbroken chain of title when the land records of the town in which the land is located disclose a conveyance or other title transaction, of record not less than forty (40) years at the time the marketability is to be determined, which conveyance or other title transaction purports to create such interest in land, or

which contains language sufficient to transfer the interest, either in the person claiming that interest, or some other person from whom, by one or more conveyances or other title transactions of record, the purported interest has become vested in the person claiming the interest; with nothing appearing of record, in either case, purporting to divest the claimant of the purported interest."

6. Because the trial justice's judgment was based on the merits of the case, we will limit our review to the issues of the creation of easements by substitution and necessity and will not address the Court's rulings on the statute of limitations and MRTA issues.

■ "Because of our concern that a persons title to real estate should remain free and unfettered, we have held an individual who seeks to establish an easement upon the land of another to a high degree of proof." *Berberian v. Dowd,* 104 R.I. 585, 589, 247 A.2d 508, 510–11 (1968). Although a plaintiff in a civil action normally must meet his burden by only a preponderance of the evidence, the plaintiff must overcome a higher clear and convincing standard to prove an easement. *Id.* at 590, 247 A.2d at 511 (citing *Foley v. Lyons,* 85 R.I. 86, 125 A.2d 247 (1956); *Day v. The Proprietors of Swan Point Cemetery,* 51 R.I. 213, 153 A. 312 (1931); *Tefft v. Reynolds,* 43 R.I. 538, 113 A. 787 (1921)).

## Analysis and Discussion
## III
### Easement by Substitution

■ Rhode Island has firmly established precedent on the law of easement by substitution. This Court, in *Hurst v. Brayton,* 43 R.I. 378, 113 A. 4 (1921), said succinctly that "[w]hen the owner of a servient estate closes with a wall or other structure the original way and points out another way which is accepted by the owner of the dominant estate, the new way may become a way by substitution." *Id.* at 381, 113 A. at 5. In *Hurst,* the complainant brought a bill in equity to enjoin the obstruction of his right-of-way across the respondents' property. *Id.* at 379, 113 A. at 4. The respondents agreed that the complainant had a right-of-way; however, they demanded that complainant "now construct at great expense to himself a way along the line described in the reservation clause in the deed* * *." *Id.* at 380, 113 A. at 4. The Superior Court found "that for at least 70 years this way has been used by complainant and those who preceded him in title with the knowledge of and without objection from respondents or their predecessors." *Id.* The Court further found ample evidence of an agreement in which "the respondents' mother and ancestor in title preferred the way in question be used rather than the original way, which would lead through her cow pasture." *Id.* at 381, 113 A. at 5.

In our opinion, the trial justice was correct when he found that Ondis' evidence manifested "nothing that would be construed as either an agreement or even a pointing out, if that is different from an agreement." The only evidence plaintiff offered on the point was his testimony that the fire road was used to get access to the property before the city blocked the path in 1999. The trial justice correctly found that there were no facts on the record that would support plaintiff's theory that the fire road was substituted by agreement of the dominant and servient estates at the time the deeded easement was destroyed, or at any time thereafter.

On appeal, plaintiff argues that neither "pointing out" nor actual agreement are elements of substitution. He urges this Court to presume the intent to substitute from the "general and long-continued acquiescence" of the city, which formed a "tacit understanding or an implied agreement" between the parties, citing *Almy v. Church,* 18 R.I. 182, 188, 26 A. 58, 60 (1893) and *Anderson v. DeVries,* 326 Mass. 127, 93 N.E.2d 251, 255 (1950), *rev'd on other grounds, M.P.M. Builders v. Dwyer,* 442 Mass. 87, 809 N.E.2d 1053 (2004).

In *Almy,* 18 R.I. at 182, 186, 26 A. at 58, 59, the petitioner sought to restrain the town council of Tiverton from opening two alleged highways that would go through his farmland and buildings, and that were "obstructed by gates and walls for the last hundred years or more." This Court first held that the public's rights could not be extinguished by adverse possession; however, the Court recognized "while, in fact

another way, substantially parallel, has been used instead of the original one, * * * it is not at all inconsistent to hold that, under a new dedication, another way, equally convenient, has been substituted, by general and long-continued acquiescence, for the original way." *Id.* at 188, 26 A. at 60. The Court reasoned that "[the easement's] particular location may have been varied by common consent," leaving that determination to the trial court on remand. *Id.*

In our opinion, *Almy* is of no use to plaintiff and we see no merit to his argument. Indeed, even if this Court accepted plaintiff's interpretation of substitution as not requiring the "pointing out" explicitly set forth in *Hurst,* he has offered no facts suggesting that the city acquiesced or even had knowledge of the use of the fire road for the benefit of the woodlot.[7] *See Hurst,* 43 R.I. at 379–80, 113 A. at 4. When this Court has presumed an agreement to substitute between dominant and servient estates in the past, it was on the basis of sufficient facts showing at a minimum both parties' knowledge of the use of the new easement. *See, e.g., Garraty v. Duffy,* 7 R.I. 476, 476 (1863) (holding that an agreement between estates could be presumed by "use so exclusive and continued," such that a deeded easement with no identified location became fixed over time and could not be changed without the consent of the servient estate).

We agree with the trial justice's conclusion that plaintiff's evidence amounted to little more than mere instances of trespass and that the evidence was insufficient to establish an easement by substitution with respect to the fire road.

## IV

### Easement by Necessity

▮ In his second argument, plaintiff asks this Court to conclude the existence of an easement by necessity by abandoning the unity of title doctrine. He invites us to follow the example of the Connecticut Supreme Court in *Bolan v. Avalon Farms Prop. Owners Ass'n, Inc.,* 250 Conn. 135, 735 A.2d 798 (1999). In *Bolan,* the Court overturned previous Connecticut law in the case of *Curtin v. Franchetti,* 156 Conn. 387, 242 A.2d 725 (1968), and the principle that "an easement [could only] be created by a person who has title to both the easement area and the property to be served by the easement." *Id.* at 727; *see Bolan,* 735 A.2d at 804. The Court found that the unity of title rule precluded finding an easement, which was contrary to "the expressed intention of the parties to the defendant's deeds." *Bolan,* 735 A.2d at 804. Therefore, because it would frustrate the grantor's intent to create an interest, the Court held that the intent of the deed creating an easement should be effectuated even if no unity of title existed between the servient estate and the dominant estate that the easement was intended to serve. *Id.* at 803. The Court noted that the purchaser of the servient estate would have sufficient notice of an easement "because the language of its deed and the surrounding circumstances would manifest such an intent." *Id.* at 804 n. 8.

---

7. Similarly, plaintiff's reliance on *Anderson v. DeVries,* 326 Mass. 127, 93 N.E.2d 251 (1950) is far removed. In that case, the Supreme Judicial Court of Massachusetts held that in a situation with a deeded yet-undefined easement, the Court could fix and determine its width to effectuate the intentions of the par-

ties. *Id.* at 254. The ability of the Court to use its powers to interpret an ambiguous deed is utterly unrelated to plaintiff's position that an easement exists over the fire road because the city destroyed an easement more than 100 years ago.

The plaintiff also argues that his situation is factually similar to *D'Addario v. Truskoski*, 57 Conn.App. 236, 749 A.2d 38, 44 (1999), in which the Connecticut Appellate Court affirmed an easement over the defendant's land once the plaintiff's property became landlocked "by the unusual circumstances of the state's taking land to the south of the turnpike, the railroad tracks to the north and the natural disaster that destroyed the bridge over the Noroton River." In *D'Addario*, the State of Connecticut had condemned certain property, and discovering it had taken more land than it needed, reconveyed a 9.8-acre parcel to the plaintiff. *Id.* at 40. This parcel came with an easement over a road on the defendant's land because the plaintiff's land would have been landlocked otherwise. *Id.* at 41, 42. The plaintiff then purchased a 22-acre parcel from another party that was adjacent to its 9.8-acre parcel. *Id.* at 42. This parcel's only point of access was a bridge across the river that bordered it. *Id.* This bridge was destroyed in 1955; after that, its temporary replacement also was destroyed in 1972. *Id.* Since 1972, trucks belonging to the town and the owner of a business on the land used the road on the defendant's property instead. *Id.*

The Appeals Court held that because the Connecticut Supreme Court had abandoned the unity of title doctrine in *Bolan*, equity demanded that the plaintiffs have a "right-of-way for the beneficial enjoyment of the * * * land." *D'Addario*, 749 A.2d at 45. The Court in *D'Addario* noted that "no person shall be denied the beneficial enjoyment and use of land because it is not accessible." *Id.* Therefore, in Connecticut the single critical question to determine whether an easement arises by necessity is whether a reasonable necessity for an easement exists. *See id.* at 44–45. If the Court determines it does, then it appears carving out an easement for the benefit of the landlocked property over the property interests of another, is preferred.

■ However, we decline the invitation to follow Connecticut precedent. We believe our own law to be concise and consistent with respect to easements by necessity. We recently have reaffirmed the test for easement by necessity in Rhode Island as "whether the easement is reasonably necessary for the convenient and comfortable enjoyment of the property as it existed when the severance was made." *Nunes v. Meadowbrook Dev. Co.*, 824 A.2d 421, 424 (R.I.2003) (quoting *Wiesel v. Smira*, 49 R.I. 246, 250, 142 A. 148, 150 (1928)).[8] Unfortunately for plaintiff, easement by necessity is not a cure-all for landlocked property because "[i]ndeed the unity requirement prevents a finding of an easement by necessity in the land of a third person who is a stranger to the claimant's title." *Bovi v. Murray*, 601 A.2d 960, 962 (R.I.1992) (citing 3 R. Powell, *The Law of Real Property* ¶ 411 (1991)).

The plaintiff does not dispute the Superior Court's finding that there was an express easement at the time of partition in 1876. Under our well-established precedent, this alone obviates a finding of easement by necessity. On appeal, the plaintiff argues for an expansion of the law, so that an easement by necessity may arise later in time, after severance has occurred, when access is actually destroyed. Plaintiff argues that this Court has never specified that the point of severance is the only

8. The elements of easement by necessity in the vast majority of states include "[1] [p]rior common ownership of the dominant and the servient tenements[,] [2] [t]ransfer of one of the parcels (severance)[,] [3] [n]ecessity for an easement at severance[,] [and] [4] [c]ontinuing necessity for an easement." Jon W. Bruce and James W. Ely, Jr., *The Law of Easements and Licenses in Land*, § 4:6 (2001).

time an easement by necessity can arise. We disagree; the language in *Nunes* is crystal clear that the time of "severance" is the relevant time period. *Nunes,* 824 A.2d at 424.

In *Bovi,* this Court reasoned that an easement by necessity was "predicated upon the theory that when a person conveys property, he or she includes or intends to include in the conveyance whatever is necessary for the use and enjoyment of the land retained." *Bovi,* 601 A.2d at 962 (citing *Story v. Hefner,* 540 P.2d 562, 566 (Okla.1975)). The unity of title requirement allows courts to infer the intent of the grantor in reserving an easement when none was actually provided. Easement by necessity rests on a narrow legal theory and is limited to a factual scenario, in which a single owner partitions land and fails to reserve an express easement in favor of the parcel that has become landlocked as a result of the severance.

The essence of the plaintiff's argument is that because the deeded easement was destroyed by the city, another right-of-way should arise in its place. As the trial justice noted, a cause of action for the destruction of the easement may have arisen, but it has long since evaporated. Although this Court is not insensitive to the plaintiff's plight as the owner of a landlocked parcel, there is no legal basis to interfere with the city's good title over the fire road and its right to exclude who ever it wishes.

## Conclusion

We affirm the judgment of the Superior Court and return the papers in this case thereto.

Justice SUTTELL did not participate.