[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an administrative appeal taken by Steven Tulka and Cynthia Tulka (hereinafter the "plaintiffs") from the action of the Planning Commission of the Town of Groton (hereinafter the "Commission") in granting the application of Brom Builders, Inc. (hereinafter "Brom") for a subdivision, or resubdivision, of property owned by Donald W. Way and Crystal J. Way and located in the Town of Groton.
For reasons hereinafter stated, the action of the Commission in granting the application is affirmed.
The plaintiffs have instituted this appeal under the provisions of General Statutes § 8-8. Section 8-8 limits appeals to persons aggrieved by the decision appealed from. Pleading and proof of CT Page 9402 aggrievement are essential to establish subject matter jurisdiction over an appeal under § 8-8. Jolly, Inc. v. Zoning Board of Appeals,237 Conn. 184, 192 (1996). The question of aggrievement is essentially one of standing. McNally v. Zoning Commission, 225 Conn. 1, 5-6 (1993).
A person owning land that abuts or is within a radius of 100 feet of the land involved in any decision of a planning commission is statutorily aggrieved. See General Statutes § 8-8 (a). An owner of land abutting or within a radius of 100 feet of the subject property is "an aggrieved person". Smith v. Planning Zoning Board, 3 Conn. App. 550, 555-556
(1985), aff'd. 203 Conn. 317 (1987). In their complaint, both plaintiffs allege that they own property which abuts a portion of the property of the decision now under appeal and is within 100 feet of such property. The evidence indicates that on June 1, 1984, plaintiffs acquired title to Lot #2 on Mystic Ridge subdivision. An examination of this subdivision map does disclose that plaintiffs hold title to land within 100 feet of the property which is the subject of this appeal. It is therefore concluded that plaintiffs are statutorily aggrieved and have standing to prosecute this appeal.
On April 30, 2001, Brom filed an application with the Commission to subdivide 8.2 acres (more or less) of land at Pequot Avenue in the Town of Groton into eight residential building lots. The owner of the property was listed as defendants Donald W. and Crystal J. Way.
A public hearing was scheduled on the application for June 12, 2001. In the published notice of the hearing, the item was described as a resubdivision of land of David and Crystal Way at 441 Pequot Avenue and off Algonquin Drive in the Town of Groton.
At the conclusion of the public hearing held June 12, 2001, it was voted to continue the hearing to June 26, 2001. The public hearing on the application proceeded until approximately 9:00 p.m. on June 26, 2001 at which time it was voted by the Commission to again continue the hearing to July 10, 2001. The matter was again heard on July 10, 2001, but not concluded. It was voted on that day to continue the hearing once more to a special meeting to be held July 16, 2001. The public hearing again resumed on that date. After some discussion, it was voted to close the public hearing on the application. The matter was then tabled by the Commission and continued to August 6, 2001.
At a special meeting held August 6, 2001, the Commission voted unanimously to approve the subdivision application with modification. In approving the application, the Commission made the following findings of fact and conformance with the subdivision regulations.
CT Page 9403 (1) The Commission finds that the applicant has the right to request and have approved the construction of a public street across the Mystic Ridge Subdivision open space in accordance with note #12 on the Jakies Acres and Mystic Ridge subdivision plans.
 (2) The Commission finds that the "Resubdivision Plan — Way Subdivision" is consistent with the Subdivision Regulation requirements for the proposed cul-de-sac road based on the length of the road being no greater than 1,200' and that this proposed cul-de-sac road serves less than 15 lots. Furthermore, this subdivision approval is consistent with the requirements of Section 4.3(1)k) and 4.3 (1)c)i.
 (3) The Commission finds that a secondary emergency access has also been provided to serve homes on Algonquin Drive and the new cul-de-sac road, and therefore, finds the length of the proposed cul-de-sac road and the number of lots included thereon in this particular case to be reasonable and consistent with the requirements of the regulations.
 (4) The Commission finds that adequate provisions have been made for the future extension of public utilities into the subdivision from the appropriate and acceptable future service location along Pequot Avenue.
 (5) The Commission finds that adequate provisions for open space have been made with the extensions of and connections to the existing Town open space along Algonquin Drive and the dedication of linear open space for recreation and pedestrian access from the subdivision to Pequot Avenue. The total proposed open space on this subdivision is greater than 10 percent of the subdivision area.
 (6) The Commission hereby finds that, with the following modifications, the application is consistent with all applicable standards and regulations of the Town of Groton Subdivision and Zoning Regulations, and conforms to all other public health and safety requirements.
CT Page 9404 It is found that the findings of fact and conclusion with respect to the subdivision regulations made by the Commission constitutes the statement of the grounds for the action of the Commission as required by Connecticut General Statutes § 8-26 where the zoning authority, such as the Commission here, has stated the reasons for its decision, the court is not at liberty to probe beyond them. DeMaria v. Planning Zoning Commission, 159 Conn. 534, 541 (1970).
All public notices concerning hearings and actions by the Commission were properly published and no jurisdictional defects have been pointed out.
Within the time allowed by statute, plaintiffs instituted the present appeal.
In their brief, plaintiffs claim that: (1) the findings of the Commission that the proposed subdivision meets the standards of the Town of Groton subdivision regulations concerning cul-de-sacs and dead-end roads incorrectly interprets the regulations; and (2) that the applicant has no right to use town-owned open space, dedicated to, and made a part of the Mystic Ridge subdivision, for access to the proposed subdivision.
Matters not briefed will be considered as abandoned. Shaw v. PlanningCommission, 5 Conn. App. 520, 525 (1985).
In deciding the issues presented by this appeal, the court is limited in its scope of review by statute and applicable case law. Review of the decisions of local zoning authorities is limited to a determination, principally on the record before the Commission, whether the Commission abused the discretion vested in it. Beit Havurah v. Zoning Board ofAppeals, 177 Conn. 440, 444 (1979); Cybulski v. Planning ZoningCommission, 43 Conn. App. 105, 110, cert. denied, 239 Conn. 949 (1996). This court can sustain the appeal only upon a determination that the action taken by the Commission was unreasonable, arbitrary or illegal. It must not substitute its judgment for that of the local Commission and must not disturb the decision of the Commission as long as honest judgment has been reasonably and fairly exercised. Bloom v. Zoning Boardof Appeals, 233 Conn. 198, 206 (1995)); Raczkowski v. Zoning Commission,53 Conn. App. 636, 644-45 (1999). Conclusions reached by the Commission must be upheld by the court if they are reasonably supported by the record. Christian Activities Council, Congregational v. Town Council,249 Conn. 566, 583 (1999). The question on review of the Commission's action is not whether the court would have reached the same conclusion, but whether the record before the Commission supports the decision reached. Id. Although the factual and discretionary determinations of the Commission must be given considerable weight, it is for the court to CT Page 9405 expound and apply governing principles of law. Domestic Violence Servicesof Greater New Haven, Inc. v. FOIC, 47 Conn. App. 466, 470 (1998). Plaintiffs bear the burden of proof to demonstrate that the Commission acted improperly. Bloom v. Zoning Board of Appeals, supra, 233 Conn. 206;Raczkowski v. Zoning Commission, supra, 53 Conn. App. 640.
When a planning commission reviews a subdivision application, it acts in an administrative capacity. Westport v. Norwalk, 167 Conn. 151, 155
(1974). When performing administrative functions, the commission has a limited discretion with respect to subdivision applications. In such situation, the commission's function is basically to determine whether the application submitted conforms to the commission's existing subdivision regulations. R.K. Development Corporation v. Norwalk,156 Conn. 369, 375 (1968). Passing upon a subdivision application, the commission is controlled by the regulations which it has previously adopted. Westport v. Norwalk, supra, 167 Conn. 155. A planning commission, such as the defendant commission, cannot disapprove a subdivision application for a reason based upon a standard not contained in its existing regulations. R.K. Development Corporation v. Norwalk, supra, 156 Conn. 377. Where a subdivision application meets the existing regulations, the commission must approve the application. Beach v.Planning Zoning Commission, 141 Conn. 79, 84 (1954). If a subdivision application does not conform with the subdivision regulations, the commission should disapprove the application. Southeast Property Ownersand Residents Assn. v. City Plan Commission, 156 Conn. 587, 591-592
(1968). In an appeal from the granting of a subdivision permit the question for the court is whether the reasons assigned by the commission for approval of the application were valid. Crescent DevelopmentCorporation v. Planning Commission, 148 Conn. 145, 150 (1961). The court must determine whether the reasons given by the commission for granting of the application are supported by the express language of the commission's regulations and whether the granting, based upon specific sections of the regulations, is reasonably supported by evidence in the record. Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 56-57 (1987). The action of the commission should be upheld if any of the reasons given its decision on the application are valid. Blakeman v.Planning Commission, 152 Conn. 303, 306 (1965). The essential question is whether the commission's decision is reasonably supported by the record, and if so, the court should not substitute its judgment for that of the commission. Westport v. Norwalk, supra, 167 Conn. 161.
Before considering plaintiffs' claims, it is necessary to review certain underlying facts which are not greatly in dispute.
Access to the Way subdivision, the approval of which is the subject of this action, is from Algonquin Drive. Algonquin Drive is shown as a CT Page 9406 dead-end street, 800 feet in length, on a ten-lot subdivision known as Mystic Ridge approved by the Commission on February 1, 1977. Approximately 328 feet from the intersection of the northerly line of Algonquin Drive and Pequot Avenue, a public street, the Mystic Ridge map shows an irregularly shaped parcel of land, 37,210 square feet in area, designated as "park area (to be deeded to the Town of Groton)." The Mystic Ridge map also contains several notes. Note 12, which was required by the Commission for approval of the subdivision, states: "12. The area shown as park area shall include the right to construct a street to serve the Albertus W. Way property to the north." The same language was included in the deed conveying the park area to the Town of Groton. The land which adjoins the park area on its northerly side is described on the map as being "N/F Albertus W. Way."
An examination of the two subdivision maps confirms that the Way subdivision, which is the subject of this action, has been laid out on the land designated as the Albertus W. Way property on the Mystic Ridge subdivision.
The eight building lots on the Way subdivision are served by a dead-end street, designated as Oxford Court 700 feet in length. This street proceeds from its intersection with Algonquin Drive to its terminus at a cul-de-sac. From its intersection with Algonquin Drive, Oxford Court passes through the land designated as park area on the Mystic Ridge map.
The layout of Oxford Court across the park area appears to be in conformance with note 12 on the Mystic Ridge map.
In connection with Note 12, the state of the law concerning easements has been raised as an issue in this case. At the time the Mystic Ridge subdivision was approved, Curtin v. Franchetti, 156 Conn. 387, 389
(1968), was the leading case on the creation of easements. The law as established in that case was the unity of title doctrine which meant that no right-of-way appurtenant could be created without a dominant as well as a serviant estate.
Because of the unity of title doctrine, it is doubtful if any right-of-way claimed under Note 12 could have been enforced in 1977 since unity of title did not exist. The unity of title doctrine was expressly abandoned by the Supreme Court in Bolan v. Avalon Farms, 250 Conn. 135,144 (1999). In that case, it was held that the "intent of the deed creating an easement should be effectuated even if no unity of title exists between the serviant estate and the dominant estate the easement is intended to serve."
 I. CT Page 9407
The plaintiffs' contend that the findings of the Commission that the proposed subdivision meets the standards of the Town of Groton subdivision regulations concerning cul-de-sacs and dead-end roads incorrectly interpreted the regulations. The regulations which it is claimed the Commission incorrectly interpreted are found in § 4 of the subdivision regulations. Section 4.1(e) states that the policies and purposes of the regulations, with which all applications must comply, are as established in § 1.2 and § 1.3 of the regulations. Section 1.2 sets forth the broad purposes for which the subdivision regulations were enacted while § 1.3 refers to the statutory authority of the Commission and the policies incorporated within the General Statutes.
Section 4.3 of the regulations covers existing and proposed streets. Section 4.3(1)(b) requires that, in general, lots created by a subdivision shall be served by a public street. Section 4.3(1)(c)i) provides:
 All subdivisions shall have frontage on and vehicular access from an existing Town accepted street, state highway, or street shown on a plan approved by the Planning Commission and recorded in the Land Records of the Town of Groton. In subdivisions containing 25 or more lots, the Commission may require that the development be accessible from two directions.
The principal section of the regulations which it is claimed that the Commission misinterpreted is the following portion of § 4.3(1)k):
 Dead-end Roads — Permanent dead-end roads in residential subdivisions shall be limited to serving 15 lots and shall not exceed an extreme length of 1,200' (measured to the end of the turnaround right-of-way).
In its findings of fact, the Commission specifically determined that the Way subdivision was consistent with both of the above-quoted regulations covering the proposed road (Oxford Court). "Based on the length of the road being no greater than 1,200' and the proposed cul-de-sac road serves less than 15 lots."
It is plaintiffs' claim that the street on the Way subdivision when combined with Algonquin Drive will violate § 4.3(1)k) because the combined lengths of the two streets will exceed 1,200 feet and the combined number of lots on both subdivisions will exceed 15. The plaintiffs also argue that treating Algonquin Drive and Oxford Court as CT Page 9408 two separate streets nullifies the intent of the regulations. It is argued that if the two streets are treated as separate then dead-end streets may be grafted on to dead-end streets ad infinitum with unlimited dead-end streets branching off from dead-end streets thwarting the purpose of the regulations.
The parties have presented a number of trial court decisions in which the court has been presented with similar situations. The only Appellate Court decision, close in point, presented is Paige v. Town Plan ZoningCommission, 35 Conn. App. 646. In this case, the local regulations defined a cul-de-sac as "a street closed at one end by building lots and which will not be extended in the future." Id. 653 n. 9. The regulations stated that a cul-de-sac could not provide access to more than ten building lots. The proposed subdivision map in the Paige case contained more than ten lots and had a single entrance onto a public highway. The subdivision map showed a single street, "Mailands Road," which, after its entrance was horseshoe shaped with a section of the road crossing the end of the horseshoe. Each end of the road had a cul-de-sac or turnaround at its terminus. Id. 654.
The trial court found that, although the subdivision street had one name and only one point of access to the public highway, the road was actually three separate intersecting streets which were not closed at one end. In upholding the trial court, the Appellate Court held that the Commission did not act unreasonably, arbitrarily or illegally in approving the subdivision application.
The definition of cul-de-sac found in the Groton Subdivision Regulations differs from the Fairfield definition found in Paige. In the regulation which governs this case, § 6-5, provides that cul-de-sac shall mean a street or portion of a street with only one vehicular outlet.
Unlike the Fairfield regulations and some of the regulations found in the cases cited by both parties, the definition of cul-de-sac as contained in § 6-5 does not appear to express the regulatory concept intended to cover streets with one entrance and no exit. This concept is found in the Groton regulations in § 4.3(1)k) which provides that permanent dead-end roads in residential subdivisions shall be limited to serving 15 lots and shall not exceed 1,200 feet extending in a cul-de-sac turnaround, the dimensions of which are specified.
As in Paige, the Groton regulations contain no specific prohibition against a dead-end street branching off from an existing such street.
The total length of the proposed dead-end street in the Way subdivision CT Page 9409 is less than 1,200 feet as measured from the intersection of Pequot Avenue along Algonquin Drive to the end of the cul-de-sac on Oxford Court. This is the route emergency vehicles would have to take to reach Oxford Court. The plaintiffs argue that the total length of Algonquin Drive should be added to the total length of Oxford Court to arrive at the total length of the subdivision street and that this would exceed the minimum allowed by the regulations. This, however, is not logical and has no relation to the public safety requirement which underlie the regulation.
Plaintiffs also argue that the total number of building lots served by both Algonquin Drive and Oxford Court should be added together and, if this were done, the total would exceed that allowed under the regulation. The subdivisions, however, are separate and adding the total number of lots in both subdivisions is illogical from the standpoint of public safety and the purpose of the regulations. Viewing the Way subdivision and the Mystic Ridge subdivision separately as the Commission did, it is obvious that, at the most, one building lot on the Mystic Ridge subdivision would be served by that portion of Algonquin Drive which emergency vehicles would have to pass to get to Oxford Court.[1]
It is claimed by the plaintiffs that the Commission has adopted an incorrect interpretation of its regulations in approving the Way subdivision which could result in dead-end streets being grafted on to dead-end streets ad infinitum. This, however, does not appear to be the case.
As has been noted, there is nothing in the subdivision regulations which prohibits one dead-end street being accessed from another. Also, the definition of cul-de-sac found in § 6-5 of the regulations mentions a street "or a portion of a street." This phrase is consistent with the situation found in Paige v. Town Plan Zoning Commission, supra, 35 Conn. App. 654. Zoning and subdivision regulations being in derogation of common law must be strictly construed and not extended by implication. Schwartz v. Planning Zoning Commission, 208 Conn. 146, 153
(1988).
Also, in considering the application for approval of the Way subdivision and all subdivisions, the Commission is required to consider not only the standards and regulations of its subdivision regulations, but also the zoning regulations as well as public health and safety requirements. Here, the Commission found that the Way subdivision as approved was consistent with such regulations. In this connection, a secondary emergency access was included on the plan from Pequot Avenue which could benefit not only the homes on Oxford Court, but also those on Algonquin Drive. CT Page 9410
Section 4.3(1)(c)i) of the regulations provides that in subdivisions containing 25 or more lots the Commission may require that the development be accessible from two directions. This section could be used by the Commission to limit the proliferation of dead-end streets which plaintiffs argue could occur under the Commission's interpretation of the regulations. While this is true, it must also be considered that § 4.3.1(c)i) contemplates subdivisions of up to 25 lots with a single access onto a public highway, as in the Paige case.
Plaintiffs' argument that the Commission's interpretation of the applicability of § 4.3(1)(k) to the Way subdivision is inconsistent with the regulations and will lead to problems with one-way streets is not well founded. The ability of the Commission to require more than one access under the provisions of § 4.3(1)(c)i) has already been commented on. Under the provisions of § 4.3(1)(a) and (b), the Commission must require that all proposed streets be in harmony with existing or proposed roads as shown on the plan of development, especially with regard to safe intersections and must be arranged to provide adequate and convenient systems for present and prospective traffic needs and lots created as a result of a subdivision must be served by a public street so as to ensure safety and health. The Commission must also determine that any proposed street provide safe circulation and be capable of accommodating the increased traffic generated by the subdivision under § 4.3.1(a)ii). The streets of any proposed subdivision could be required by the Commission to connect to an existing or proposed street under the provisions of § 4.3.e(1) (vi) to assure safe and efficient circulation of traffic.
Considering all of the facts presented, it must be considered that there is substantial evidence in the record to support the conclusions reached by the Commission.
It must further be found that the Commission correctly interpreted its regulations and properly applied such interpretation to the facts in reaching its findings.
 II.
The plaintiffs contend that the applicants for the Way subdivision had no right to use the open space, or park area, which was dedicated and made a part of the Mystic Ridge subdivision for access to the proposed subdivision.
As previously noted, in connection with the Mystic Ridge subdivision, a parcel of land was designated as "park area (to be deeded to the Town of CT Page 9411 Groton)." This parcel was subsequently deeded to the Town. The Mystic Ridge subdivision map contained note 12 which stated that the park area should include the right to construct a street to serve the Albertus W. Way property to the north. This language was included in the deed to the Town. Oxford Court which serves the proposed Way subdivision is laid out over this park area.
The deeds to the property in the Mystic Ridge subdivision contain a reference to the subdivision map which includes note 12. Some of the deeds specifically mention note 12.
By way of background, it may reasonably be inferred from the record that when Allyn Street was laid out as a non-access connector with 1-95, the Way property became landlocked, at least along Allyn Street. There was, however, an easement along the southerly line of the Way property from Pequot Avenue.
The plaintiffs have raised a number of issues concerning note 12. They claim now and argued before the Commission that whatever right the owner of the Way property may have had under the provisions of note 12, such rights have been abandoned. This claim is based primarily upon language in a map description of property acquired by Donald W. and Crystal J. Way. This map dated April 19, 1994 shows residential property acquired by the Ways which fronts on Pequot Avenue and extends westerly to the Way property shown on the Mystic Ridge subdivision map. Note 3 on the Ways' map, which plaintiffs claim waives any rights created under note 12 in the Mystic Ridge map states:
 3. The portion of the subject property described in Volume 546 at page 347 was conveyed subject to a 10 foot wide right of way along the southerly boundary for access to and from the property described in Volume 407 at page 18 to Pequot Avenue. As of the date of this survey and plan record title to both parcels is in single ownership and therefore the 10 foot wide right of way has been extinguished by merger of title. The reconfigured parcels depicted hereon provide for direct access for both parcels along Pequot Avenue and precludes the need for any new rights of way for either parcel.
By acquiring the property subject to the ten-foot right-of-way, the Ways did create a merger of title which extinguished the right-of-way to Pequot Avenue. The map, which contains note 3, shows a strip of land, northerly of the house lot, which could serve as an access to the interior Way property from Pequot Avenue. At one of the public hearings, CT Page 9412 Mr. Way testified that this was done in the event that his children wished to live on the land. It is plaintiffs' contention that this action by the Ways constituted an abandonment of any rights which they may have had under note 12.
In reviewing a subdivision application, however, the function of the Commission was to approve or disapprove the subdivision. This was an administrative decision, not a judicial decision. If the application conformed to the regulations, it had to be approved if it did not meet the regulations the application would have to be denied. "Because a Commission is not a court of law its authority is strictly limited. It can only apply its regulations to the proposal which appears before it."Gagnon v. Municipal Planning Commission, 10 Conn. App. 54, 57 (1987), cert. denied 203 Conn. 807 (1987).
The Commission was not equipped to make the legal decision as to whether or not the easement, or right-of-way, had been abandoned.Property Group, Inc. v. Planning Zoning Commission, 226 Conn. 684, 693
(1993). The Commission's authority was limited to determining whether or not the subdivision application complied with the applicable regulations. It could not make a determination of legal rights. Fuller, 33.8, Land Use and Regulations. The Commission was required to proceed on the basis of whether or not the application met the requirements of the regulations. A determination as to whether the provisions of note 12 had been extinguished by note 3 of the Way map can only be made by a court.
The issue now before the court is whether the Commission acted illegally in proceeding on the basis that note 12 was still in effect. It must be concluded that the Commission acted properly in this regard. Although it is not clear as to whether the issue of abandonment is properly before the court in this appeal, it must be found that the language of note 3 on the Way map does not constitute an abandonment of any rights which may have existed under note 12.
"Whether there has been an abandonment is a question of intention to be determined from all of the surrounding circumstances, and is a question of fact and not of law. The proof must clearly indicate that it was the intention of the owner of the dominant estate to abandon the easement."Freedman v. Town of Westport, 50 Conn. App. 209, 212 (1998). The mere nonuser of an easement does not itself create an abandonment. The nonuser must be accompanied by circumstances clearly indicating an intention to abandon the easement. Toms v. Cettipane, 30 Conn. Sup. 374, 377 (1973).
The language used in note 3 must be considered in light of the circumstances under which the map was prepared. The first six and a-half lines of the note refer to the fact that the ten-foot easement had been CT Page 9413 extinguished by operation of law. The last sentence recited the fact that the property had been reconfigured with two parcels with direct access to the public highway and no new right-of-way was required for either parcel. This language could not be stretched by implication to prove the intent to abandon an existing right-of-way. If it was the intent of the Ways to abandon any rights which they might have under note 12, a specific reference could have been made to it.
There was testimony before the Commission that some property owners in the Mystic Ridge subdivision could rely on the recorded Way map dated 1994. There was nothing to indicate, however, that such property owners acquired any legal rights as a result of this reliance or that it affected the administration of the subdivision regulations.
It was also brought to the attention of the Commission that the Mystic Ridge subdivision property owners, including plaintiffs, relied on the fact that the provisions of note 12 were invalid because of the unity of title concept expressed in Curtin v. Franchetti, supra, 156 Conn. 389. Again, there was nothing to indicate that plaintiffs or anyone else suffered a diminution of their legal rights as a result of the change in law reflected in Bolan v. Avalon Farms, supra, 250 Conn. 144. In this connection, it should be noted that the unity of title requirement might well have prevented the enforcement of any rights which the Ways may have had under the provisions of note 12. There was, however, nothing to prevent the Town from honoring the provisions of note 12. It must be assumed that when the Commission required this provision to be included in the layout of the Mystic Ridge subdivision it did so in accordance with the regulations then in effect and for appropriate land use considerations. Under such circumstances, a resort to legal enforcement of the provisions of note 12 would be unnecessary.
From the time note 12 was inserted on the Mystic Ridge subdivision map, it would be prudent to assume that the municipal authorities would honor its provisions.
Section 4.9(1) of the subdivision regulations provides that the Commission may require that land, in subdivisions, be reserved for parks, natural open space areas, or other public purposes. Section 4.9 (3)a) states that the total area to be reserved should be no less than 10 percent of the gross area of the subdivision unless otherwise approved by the Commission.
The Mystic Ridge subdivision contains a park area of 37,210 square feet. The layout of Oxford Court as shown on the Way subdivision and reduces the park area by 1,790 square feet. Plaintiffs, and other residents of the Mystic Ridge subdivision, have a right to enjoy this CT Page 9414 park area. They argue that approval of the Way subdivision allowing a reduction of the park area was improper and reduces the area which they have a right to enjoy.
This argument is without merit. The regulations state that the Commission "may" require that land be reserved for public purposes and the Commission is not required to do so. In the Mystic Ridge layout, the Commission did require that a portion of the subdivision be served as a park area, but by note 12, the Commission indicated that this area could be diminished by a street.
An examination of the Way subdivision, which is the subject of this action, indicates that the park area has in fact not been reduced but has been increased. As a part of the Way subdivision, 6,999 square feet, along Oxford Court has been added to the existing park area. This appears to be over three times the area which has been lost due to Oxford Court crossing the park area. Also, 28,822 square feet of open space have been added to the small portion of the original park area lying north of Oxford Court.
In their brief, plaintiffs have expressed a claim that whatever right the Ways may have had as a result of note 12 has been lost due to adverse possession. Such a claim would require a showing of open, visible, continuous and uninterrupted use for 15 years under a claim of right by the plaintiffs and residents of Mystic Ridge. Hoffman Fuel Company ofDanbury v. Elliott, 68 Conn. App. 272, 277 (2002). There has been no such showing here. The function of the Commission, as has been stated, does not include such a determination of legal rights. The function of the Commission is to determine if the subdivision meets the requirements of the regulations.
Plaintiffs also claim that note 12 is too vague to be enforceable in that there are no specific dimensions. This point is not valid since any street, including the streets shown on the Way subdivision, would have to be in compliance with the subdivision regulations then in force.
It is also argued that note 12 does not grant an easement to the owners of the Way property. According to this argument, only the Town of Groton could construct a road across the open space. The procedure for this construction would involve legislative action by the Town which has not been done in this case. This theory, however, is unrealistic and it is doubtful that it was ever contemplated that the Town would undertake the obligation of building a street for the benefit of a private developer.
Considering all of the issues raised, it must be concluded that plaintiffs have failed to demonstrate that the Commission acted CT Page 9415 improperly. The conclusions reached by the Commission are reasonably supported by the record: In finding that the Way subdivision conformed to the subdivision regulations, the Commission did not abuse the discretion vested in it but exercised an honest judgment reasonably and fairly. Accordingly, judgment is rendered affirming the decision of the Commission in approving the subdivision application.
Joseph J. Purtill Judge Trial Referee