362 A.2d 763.

ANTHONY P. ZIFCAK *vs.* GREATER WOONSOCKET
BOARD OF REALTORS, INC.

EVELYN L. ZIFCAK *vs.* GREATER WOONSOCKET
BOARD OF REALTORS, INC.

AUGUST 2, 1976.

PRESENT: Bevilacqua, C. J., Paolino, Joslin, Kelleher and Doris, JJ.

KELLEHER, J. Anthony P. and Evelyn L. Zifcak, partners in matrimony and business, have a real estate brokerage firm, located in Woonsocket, known as the "Anthony P. Zifcak Agency." The Zifcaks are duly licensed real estate brokers, and up until the end of December 1973 they were members of the Greater Woonsocket Board of Realtors, Inc. On December 20, 1973, Anthony was notified that his membership and that of anyone who worked with or for his agency would be terminated as of the end of 1973. Thereafter, Anthony and Evelyn each instituted separate suits in the Superior Court to enjoin their termination. A hearing was held before a justice of the Superior Court, and after finding for the Zifcaks he ordered the board to reinstate their memberships. The board has appealed.

The trial justice decided this controversy after an examination and consideration of a variety of documents, including the board's bylaws and a substantial amount of correspondence. The narrative which now unfolds is derived from the documentary record presented in the trial court.

The bylaws of the Greater Woonsocket Board of Realtors provide that any charge of unethical or unprofessional conduct lodged against a member should be resolved by the Professional Standards Committee. If the charges are sustained, the committee is authorized to reprimand, suspend, or expel the accused. The committee's decision can be appealed to the organization's Board of Directors. The bylaws also authorize the Professional Standards Committee to act as a board of arbitrators in cases of "professional disputes."

The Zifcaks and the board find themselves embroiled in litigation because in the spring of 1973 a member of the organization, who owned a real estate agency in Massa-

chusetts, filed a five-page complaint in letter form with the board's Grievance Committee. The complainant charged that Anthony and one of his employees[1] had engaged in unethical conduct in the course of their joint effort to effectuate the sale of a home located in Blackstone, Massachusetts. Once the complaint was filed and the organization's procedural machinery began to move, the record would indicate that apparently everybody tried to get into the act.

On May 11 Anthony was notified to appear before the Grievance Committee and answer the charges filed against him. Later, in August, the chairman of the Arbitration Committee wrote to the president, complaining, in effect, that the Grievance Committee was trespassing upon his committee's territory. The chairman reported that his committee had cleared Zifcak of all charges and concluded by informing the president that his letter was to serve as a notice of his resignation from office. The Grievance Committee, however, referred the matter to the Professional Standards Committee.[2] A hearing followed, and on October 2 Zifcak was notified that the professional standards group felt that he had acted in "a very un-professional, and unethical manner" towards his fellow member and that his "attitude and remarks * * * were in poor taste and uncalled for." The committee requested Anthony to write letters of apology to the realtor, his agency, and defend-

[1] In May of 1973 the Grievance Committee dismissed the complaint filed against the employee.

[2] As noted before, the Arbitration Committee and the Professional Standards Committee are actually one committee. It appears that sometime after August 1973 there was a change in the makeup of this committee because the request to furnish the apologies bore the signature of a chairman other than the one who sent the August 1973 epistle. Parenthetically, the trial justice ruled that the committee's power to arbitrate professional disputes was restricted to instances where the disputes concern the division of a brokerage commission.

ant organization. The letters were to be written within the next 13 days.

Anthony, however, appealed the committee's decision to defendant's Board of Directors. On December 13 he was notified by the directors that his membership was suspended "* * * until such time as he complies with the request for apologies, imposed upon him by the Professional Standard[s] Committee * * *." On December 20 the president notified Anthony that his membership in the organization would be terminated as of December 31 and in a second letter informed Anthony's wife, Evelyn, that her position as vice president of the Greater Woonsocket Board of Realtors, Inc., as well as any committee to which she had been assigned had been "vacated."

In its appeal the board argues that equitable relief should have been denied the Zifcaks because they had failed to exhaust the administrative remedies which were available within the organization before they sought judicial assistance. We have a twofold response to this contention. First, with regard to Anthony the record presented to us demonstrates that he touched all the required bases as the complaint went from Grievance Committee to Professional Standards Committee to the Board of Directors with a stopover in between at the Arbitration Committee. Evelyn, on the other hand, was a late starter, and no charges were ever brought against her. In fact, she specifically challenged her expulsion on the ground that the association had failed to adhere to the notice and hearing requirements that are in its bylaws. Second, the principle of exhaustion of internal remedies has been subject to a well-established exception, rendering it inapplicable in situations where the acts of the organization violated its constitution and bylaws, making it an unnecessary formality for the court to await an organizational correction. *Gashgai* v. *Maine Medical Ass'n*, 350 A.2d 571, 576 (Me. 1976), and cases cited therein.

*Cf. Lavalle* v. *Societe Saint Jean Baptiste de Woonsocket,* 17 R. I. 680, 684 (1892). We have recognized a similar exception to this exhaustion principle in cases where a property owner makes a jurisdictional challenge to action taken by a municipal council or planning agency. *Golden Gate Corp.* v. *Town of Narragansett,* 116 R. I. 552, 359 A.2d 321 (1976); *Frank Ansuini, Inc.* v. *City of Cranston,* 107 R. I. 63, 73, 264 A.2d 910, 915-16 (1970); *Nardi* v. *City of Providence,* 89 R. I. 437, 446, 153 A.2d 136, 141 (1959). The board's reliance on the principle of exhaustion is of no assistance because the trial justice in his rescript found several organizational actions in violation of the bylaws. First, the court noted that under the organization's bylaws the sanctions of reprimand, suspension, or expulsion could only be imposed in those instances where the organization seeks to punish a member because of his or her unethical or unprofessional conduct. And second, the trial justice found as a fact that Anthony's membership was being terminated only because he had failed to comply with the committee's request for the letters of apology and not because of any unprofessional conduct on his part.

Findings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed by the reviewing court unless they are clearly wrong. This has been our guiding principle even when the issue to be resolved depends upon the interpretation of documentary evidence. *Chase* v. *Blackstone Distrib. Co.,* 110 R. I. 537, 545, 294 A.2d 392, 396 (1972). The trial justice based the reinstatement action on his finding that the Zifcaks were expelled from the board simply because Anthony had not complied with the request and that this action was in excess of the jurisdiction conferred upon the organization by its own bylaws. We have examined the record and find no reason to disturb either finding. It follows that if the

defendant board cannot expel the husband because he failed to write the requested letters of apology, there is no justification whatever for the action taken against his wife.[3]

In each case the defendant's appeal is denied and dismissed.

*Laurent C. Bilodeau*, for plaintiffs.

*Zimmerman, Roszkowski & Brenner, Gerald M. Brenner*, for defendant.

---

[3]In denying the defendant's post-trial motion for a stay of the injunctive relief afforded the Zifcaks, the trial justice classified this controversy as "such frivolity as to be a 'Tempest in a Teapot.' " However, in initiating this litigation the Zifcaks had something more than their professional reputations at stake, because as members in good standing of the Greater Woonsocket Board of Realtors, Inc. they could take advantage of a number of certain fringe benefits, particularly the board's multiple listing service. This is a publication in which each member lists pertinent information about the various pieces of real estate he is attempting to sell. The publication is circulated within the membership, and if another member procures a ready, willing, and able buyer who wishes to purchase a particular property listed with a fellow member, a suitable division of the commission due on the sale is effectuated. It should be noted that during the pendency of this appeal, the defendant asked that we stay the judgments entered in the trial court pending the determination of this appeal, and we will now deny this request pro forma.