**Supreme Court**

No. 2013-179-Appeal.
(PD 09-3907)

Federal National Mortgage Association : 

v. :

Etta E. Malinou et al. :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Tel. 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Federal National Mortgage Association     :

v.     :

Etta E. Malinou et al.     :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Justice Flaherty, for the Court.**  The defendant, Martin Malinou, appeals from a Superior Court judgment after a trial before a justice of the Superior Court, sitting without the benefit of a jury, that awarded the plaintiff, Federal National Mortgage Association (Fannie Mae), possession of premises located at 334 Smith Street, Providence (the property).  It is noteworthy that the defendant was previously before this Court on a closely related case, Malinou v. Seattle Savings Bank, 970 A.2d 6, 12 (R.I. 2009), wherein this Court affirmed a Superior Court judgment that Seattle Savings Bank had the right to foreclose on the property.  In this appeal, the defendant challenges Fannie Mae's right to possession of the property.  On September 24, 2014, this case came before the Supreme Court pursuant to an order directing the parties to show cause why the issues in this appeal should not be summarily decided.  After hearing the arguments of the parties and examining the memoranda that they submitted, we are of the opinion that cause has not been shown, and we proceed to decide the appeal at this time without further briefing or argument.  For the reasons set forth in this opinion, we affirm the judgment of the Superior Court.

# I

## Facts and Travel

The defendant's mother, Etta E. Malinou (decedent), was the sole owner of the property from 1945 until her death in 2003, at which point defendant acquired title. Malinou, 970 A.2d at 8. On November 15, 1991, the decedent executed and delivered a home equity conversion adjustable rate note and an adjustable rate allonge (collectively the note) to Rhode Island Housing and Mortgage Finance Corporation (RIHMFC). The note was secured by a mortgage on the property. Collectively, those documents created a "reverse mortgage" that required that "all outstanding principal and accrued interest [be paid] to Lender upon receipt of a notice by Lender requiring immediate payment in full * * *." See Malinou, 970 A.2d at 8. The note specified that, upon decedent's death, lender had the right to demand immediate payment of the note in full.

On October 31, 2002, before Mrs. Malinou died, RIHMFC assigned the note and mortgage to Seattle Savings Bank. The assignment was not recorded in the Office of the Recorder of Deeds in Providence until June 3, 2003.

In January 2003, the decedent died testate as the sole owner of the property. It is undisputed that no principal or interest payments had been paid during decedent's lifetime. Pursuant to the terms of decedent's will, defendant inherited the property. It is noteworthy that defendant has resided at the property since 1946 and has maintained his law practice on the first floor since 1960.

On June 30, 2003, Seattle Savings Bank notified defendant that it held the mortgage and it demanded payment of the note in full. Malinou, 970 A.2d at 8. There is no dispute that no payments have been made since Seattle Savings Bank demanded payment in full. Id.

In August 2003, Seattle Savings Bank notified defendant that a foreclosure sale was scheduled for October 15, 2003. Malinou, 970 A.2d at 8. However, less than a week before the foreclosure date, defendant filed the first of several Chapter 13 bankruptcy proceedings. Id. In addition, defendant filed suit in Superior Court, challenging Seattle Savings Bank's authority to foreclose. Id. at 8-9. We characterized defendant's lawsuit as a tactic that allowed him "to delay, for many years, a foreclosure action instituted by * * * Seattle Savings Bank * * *." Id. at 8. Based upon the clear record title, we held that Seattle Savings Bank had the right to foreclose. Id. at 12.

Once again, in the spring of 2007, Seattle Savings Bank noticed and advertised the foreclosure of the property. This time, on June 13, 2007, the foreclosure took place and Seattle Savings Bank was the highest bidder. Thereafter, Seattle Savings Bank recorded a foreclosure deed in the Office of the Recorder of Deeds in Providence. On July 30, 2007, Seattle Savings Bank executed a quitclaim deed conveying the property to Fannie Mae. Fannie Mae recorded the quitclaim deed on August 3, 2007.

On or about August 3, 2007, Fannie Mae sent a notice of termination of tenancy by sufferance to defendant pursuant to G.L. 1956 § 34-18.1-2.[1] The notice instructed defendant to vacate the property by August 14, 2007. The defendant failed to comply. As a result, on September 7, 2007, Fannie Mae filed a trespass and ejectment complaint in Sixth Division District Court. In the District Court, the parties entered into a stipulation to transfer the case to Superior Court because "[d]efendant's defense relies upon issues of [t]itle which are properly heard in the Superior Court." An order was entered to that effect.

---

[1] General Laws 1956 § 34-18.1-2 provides that "[t]enants of lands or tenements at will or by sufferance covered by this chapter shall quit upon notice in writing from the landlord at the day named therein."

Prior to trial in Superior Court, the parties entered into a joint statement of undisputed facts. In addition to many of the facts outlined above, the parties further agreed that, on July 10, 2007, an assignment naming Seattle Mortgage Company as assignor was recorded in the Office of the Recorder of Deeds in Providence in book 8763 at page 94. That document, which was prepared by DocX, a subsidiary of Lender Processing Services, Inc. (LPS), failed to name an assignee. Further, the parties agreed that, at the time of trial, there remained on record a tax sale deed to Rookies Real Estate, NLR Partners, recorded on August 3, 2012. However, Fannie Mae was within the time to redeem the property and no petition to foreclose the right of redemption had been filed.[2]

The nonjury trial commenced on March 20, 2013. At trial, defendant, in an effort to defeat Fannie Mae's trespass and ejectment action, relied heavily upon the Seattle Mortgage Company assignment and the August 2012 tax-sale deed. In addition, defendant urged the trial justice to enforce subpoenas duces tecum that he had caused to be served upon LPS and Bank of America (BOA), respectively, one day and two days before the commencement of trial. The trial justice refused to enforce the subpoenas because they were overbroad and violated the pretrial order closing discovery on February 19, 2013. Further, the trial justice found that enforcing the subpoenas would inevitably require the trial to be suspended for an unspecified length of time.

On March 22, 2013, the trial justice issued a bench decision. In her decision, she determined that a presumption in favor of the record title holder, Fannie Mae, existed and that clear and convincing evidence was necessary to overcome that presumption. The trial justice found that the Seattle Mortgage Company assignment failed to rebut the presumption because it

---

[2] General Laws 1956 § 44-9-25(a) provides in pertinent part that "[a]fter one year from a sale of land for taxes, except as provided in §§ 44-9-19 – 44-9-22, whoever then holds the acquired title may bring a petition in the [S]uperior [C]ourt for the foreclosure of all rights of redemption under the title."

was an extraneous document that lay outside Fannie Mae's chain of title. Further, the trial justice gave no weight to the August 2012 tax-sale deed because Fannie Mae's right to redeem was still in effect.[3] Accordingly, the trial justice awarded Fannie Mae possession of the property. Judgment in favor of Fannie Mae entered on the same day.

On March 29, 2013, defendant filed a motion to stay the execution of judgment. The trial justice granted defendant's motion, staying the execution for possession until April 20, 2013 in order to give defendant an opportunity to request a stay from this Court. On April 5, 2013, defendant timely filed his notice of appeal. Also, defendant filed a motion to stay execution of the judgment with this Court. We did not oblige.

On appeal, defendant raises five points of contention. First, defendant argues that "[f]or lack of personal jurisdiction over the Estate of Etta E. Malinou the Superior Court did not have subject matter jurisdiction to determine title to the real estate devised in her [w]ill." The defendant contends that personal jurisdiction over decedent's estate was lacking because Fannie Mae failed to serve the estate. Second, defendant argues that this Court should not give deference to the trial justice's findings of fact because they were based entirely on documentary evidence. Third, defendant avers that the trial justice erred when she required clear and convincing evidence to rebut the presumption in favor of Fannie Mae. Fourth, defendant contends that the trial justice erred when she failed to enforce the subpoenas duces tecum issued

---

[3] Section 44-9-21 provides in pertinent part that "[a]ny person may redeem by paying or tendering to a purchaser, other than the city or town, his or her legal representatives, or assigns, or to the person to whom an assignment of a tax title has been made by the city or town, at any time prior to the filing of the petition for foreclosure * * *." We have reiterated that the right to redeem exists up until the petition to foreclose is pending in court. See ABAR Associates v. Luna, 870 A.2d 990, 997 (R.I. 2005); Theta Properties v. Ronci Realty Co., 814 A.2d 907, 918 (R.I. 2003).

upon LPS and BOA. Finally, defendant argues that the August 2012 tax-sale deed in favor of Rookies Real Estate divested Fannie Mae of the right to possess the property.

## II

## Standard of Review

It is well established that this Court's review of a trial justice's decision following a nonjury trial is deferential. Banville v. Brennan, 84 A.3d 424, 429 (R.I. 2014) (citing Cigarrilha v. City of Providence, 64 A.3d 1208, 1212 (R.I. 2013)). "When we review the factual findings of a trial justice sitting without a jury, we accord those findings great deference." Lamarque v. Centreville Savings Bank, 22 A.3d 1136, 1140 (R.I. 2011) (citing Ondis v. City of Woonsocket ex rel. Treasurer Touzin, 934 A.2d 799, 802 (R.I. 2007)). "Pure questions of law, however, we review on a de novo basis." Id. Thus, "[a] judgment in a nonjury case will be reversed on appeal when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong." Id. at 1139-40 (quoting Cathay Cathay, Inc. v. Vindalu, LLC, 962 A.2d 740, 745 (R.I. 2009)).

## III

## Discussion

## A

## Subject Matter Jurisdiction

The defendant's first argument before this Court is that the Superior Court did not have subject matter jurisdiction over the controversy because there was no personal jurisdiction over the estate. The defendant contends that personal jurisdiction over decedent's estate was lacking because Fannie Mae failed to serve the estate. The record reflects that defendant failed to raise this argument in the lower court. According to this Court's well settled raise-or-waive rule,

issues not properly presented before the trial court may not be raised for the first time on appeal. Peloquin v. Haven Health Center of Greenville, LLC, 61 A.3d 419, 430 (R.I. 2013) (citing State v. Breen, 767 A.2d 50, 57 (R.I. 2001)). Because defendant failed to argue that the Superior Court lacked personal jurisdiction in the lower court, we conclude that that argument has been waived.

Notwithstanding defendant's waiver, "it is well settled that by a general appearance a defendant submits himself to the jurisdiction of the court, [and] any failure to serve him with process becomes immaterial." Mack Construction Co. v. Quonset Real Estate Corp., 84 R.I. 190, 194, 122 A.2d 163, 164 (1956) (citing Industrial Trust Co. v. Rabinowitz, 65 R.I. 20, 13 A.2d 259 (1940)); see also Robert B. Kent et al., Rhode Island Civil Procedure § 12:2 at III-39 (West 2006) ("a defendant who simply answers to the merits of a claim thereby consents to the jurisdiction of the court"). Fannie Mae's underlying complaint sought to evict defendant, decedent, and all other occupants of the property. In response, defendant entered an appearance on behalf of himself and the decedent. The defendant made a suggestion of decedent's death on the record and admitted that he was the sole occupant of the property. Accordingly, we conclude that defendant's argument concerning lack of personal jurisdiction is unavailing.

However, that does not end our jurisdictional inquiry. A challenge to subject matter jurisdiction "may not be waived by any party and may be raised at any time in the proceedings." Boyer v. Bedrosian, 57 A.3d 259, 270 (R.I. 2012) (quoting Pine v. Clark, 636 A.2d 1319, 1321 (R.I. 1994)). Indeed, at the outset of the nonjury trial, the trial justice herself questioned whether or not she had jurisdiction over the trespass and ejectment action because it was not before her on a District Court appeal; rather, it was being tried in the first instance in the Superior Court after the parties had transferred it to that tribunal.

General Laws 1956 § 8-8-3(a)(2), provides that the District Court shall have exclusive original jurisdiction of "[a]ll actions between landlords and tenants pursuant to chapter 18 of title 34 and all other actions for possession of premises and estates * * *." In addition, G.L. 1956 § 8-2-14(a) states that "[t]he [S]uperior [C]ourt shall have original jurisdiction of all actions at law where title to real estate or some right or interest therein is in issue, except actions for possession of tenements let or held at will or by sufferance * * *." No provision of G.L. 1956 chapters 18 or 18.1 of title 34, provides for the removal of trespass and ejectment actions to the Superior Court for trial.

However, it is well established that a party who stipulates to judgment in the District Court is entitled to appeal that judgment to the Superior Court for a trial <u>de novo</u>. <u>Harris v. Turchetta</u>, 622 A.2d 487, 490 (R.I. 1993) (citing <u>Stidhams v. McPherson</u>, 106 R.I. 295, 259 A.2d 114 (1969)). Further, this Court previously has reviewed a trespass and ejectment action that was, by agreement, removed from the District Court to the Superior Court for trial. <u>Martineau v. King</u>, 120 R.I. 265, 266, 386 A.2d 1117, 1118 (1978). In <u>Martineau</u>, we discerned no jurisdictional deficiency, in that the case was removed to the Superior Court by agreement because, as is the case here, issues of title were raised in defense to the trespass and ejectment action. <u>Id.</u>

Here, the parties entered into a stipulation to transfer the case to Superior Court because "[d]efendant's defense relies upon issues of [t]itle which are properly heard in the Superior Court." Based upon that stipulation as well as the fact that numerous issues had been raised regarding title, the District Court entered an order granting the transfer. By agreeing to transfer the case to the Superior Court, the parties were, in essence, adhering to the same procedure as

had the parties in Martineau, 120 R.I. at 266, 386 A.2d at 1118. Accordingly, we hold that the trial court had subject matter jurisdiction over the instant action.

## B

### The Documentary Evidence

Next, defendant argues that this Court should not give deference to the trial justice's findings of fact because they were based entirely on documentary evidence. Instead, defendant urges this Court to engage in a de novo review of the evidence. As support, defendant cites Imperial Casualty and Indemnity Co. v. Bellini, 888 A.2d 957 (R.I. 2005); however, nowhere in that case did this Court make any such pronouncement. To the contrary, this Court has explained that "[f]indings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed by the reviewing court unless they are clearly wrong. This has been our guiding principle even when the issue to be resolved depends upon the interpretation of documentary evidence." Zifcak v. Greater Woonsocket Board of Realtors, Inc., 117 R.I. 9, 13, 362 A.2d 763, 766 (1976) (citing Chase v. Blackstone Distributing Co., 110 R.I. 537, 545, 294 A.2d 392, 396 (1972)). We see no reason to depart from that time-tested standard here.

## C

### Evidence Necessary to Overcome Presumption in Favor of Record Title Holder

Further, defendant contends that the trial justice erred when she required that clear and convincing evidence be presented by him to rebut the presumption that Fannie Mae acquired title to the property based upon the record title. As support, the trial justice relied upon Providence & Worcester Co. v. Exxon Corp., 116 R.I. 470, 359 A.2d 329 (1976), and Newport Yacht Club, Inc. v. Deomatares, 93 R.I. 60, 171 A.2d 78 (1961). Although those cases indicate that a presumption in favor of the record title holder exists, it is our opinion that neither case holds that

clear and convincing evidence is required to overcome the presumption. Providence & Worcester Co., 116 R.I. at 488, 359 A.2d at 339; Newport Yacht Club, Inc., 93 R.I. at 64, 171 A.2d at 80.[4]

In this case, however, it is unnecessary to make such a pronouncement, because the evidence submitted by defendant fails even under the less stringent, preponderance of the evidence standard. We previously have held that Seattle Savings Bank had the authority to foreclose. Malinou, 970 A.2d at 12. The record is clear that after the foreclosure, Seattle Savings Bank conveyed its rights and interests in the property to Fannie Mae by means of a quitclaim deed. The only document that could cast any doubt on Fannie Mae's title was the assignment involving Seattle Mortgage Company. The validity of the Seattle Mortgage Company assignment was appropriately questioned by the trial justice as a result of defendant's allegations concerning the fraudulent business practices committed by DocX, the party that prepared the assignment at issue. In addition, the Seattle Mortgage Company assignment is an extraneous document that is outside Fannie Mae's chain of title. Accordingly, and although we depart somewhat from the trial justice's reasoning, we nonetheless uphold her finding that defendant failed to rebut the presumption that Fannie Mae was entitled to possession of the property.

---

[4] In some cases concerning real property, such as adverse possession and establishing an easement, we require clear and convincing evidence in support of such claims. See DiPippo v. Sperling, 63 A.3d 503, 508 (R.I. 2013); Ondis v. City of Woonsocket ex rel. Treasurer Touzin, 934 A.2d 799, 803 (R.I. 2007); see also 74 C.J.S. Quieting Title § 76 at 70-71 (2013) (proof of title raises a presumption of possession or a right of possession that is rebutted by clear and convincing evidence).

**D**

**Subpoena Enforcement**

Next, defendant contends that the trial justice erred when she failed to enforce subpoenas duces tecum served upon LPS and BOA. The defendant argues that the trial justice strayed beyond the bounds of her discretion when she refused to enforce the subpoenas. Alternatively, defendant avers that, even if the trial justice had the discretion to decide whether to enforce the subpoenas, her failure to enforce them was an abuse of that discretion.

This Court has held that "parties should not be allowed to employ a subpoena after a discovery deadline [on the eve of trial] to obtain materials from third parties [or parties] that could have been produced before discovery [closed]." Butera v. Boucher, 798 A.2d 340, 345 (R.I. 2002) (quoting 9A Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure, § 2452 (Supp. 2002)). In Butera, the Court determined that a subpoena issued on the "eve-of-trial" that was both "overbroad and untimely" should not be enforced. Id.; see also National Exchange Bank v. Lubrano, 29 R.I. 64, 70, 68 A. 944, 946 (1908) (refusing to enforce a subpoena duces tecum issued after the close of the plaintiff's case because the defendant had had ample opportunity to request evidence prior to trial). The Court explained that a "subpoena duces tecum, when [employed] as a means of belated discovery, should not be allowed to circumvent the discovery deadlines for parties established by the other rules of civil procedure or by court order." Butera, 798 A.2d at 345.

The record reflects that the LPS and BOA subpoenas were served, respectively, one day and two days before the commencement of trial. The subpoenas, which were unlimited as to time, sought all documents and information, electronic or otherwise, related to the mortgage at issue, including the account history and trail of assignment. The trial justice said that if the

subpoenas were to be enforced, the trial would have to be suspended, because LPS and BOA "would need weeks, if not months, to search for, organize, and compile the information and to assert any objections and privileges they might deem appropriate." Further, she found that defendant had "had a substantial period of time to conduct discovery, including [Super. R. Civ. P.] 30(b) depositions" prior to trial. The trial justice also indicated that enforcing the eve-of-trial subpoenas would have run contrary to the pretrial order that closed discovery on February 19, 2013. In light of the foregoing, it is our opinion that the trial justice's decision was not an abuse of discretion and we see no reason to disturb it.

**E**

**2012 Tax Sale Deed**

Finally, the defendant argues that, because the property was sold at a tax sale conducted by municipal authorities in 2012, Fannie Mae no longer had the authority to bring the action. But a reading of G.L. 1956 § 44-9-12(a) reveals that a tax sale does not "give to the purchaser any right to either the possession, or the rents, or profits of the land until the expiration of one year after the date of the sale * * *." This Court has explained that "[o]ne who purchases property at a tax sale acquires a title that is contingent upon the owner's nonredemption." Alberston v. Leca, 447 A.2d 383, 388 (R.I. 1982) (citing § 44-9-12). It is undisputed that, at the time of trial, Fannie Mae retained its right of redemption. Accordingly, the trial justice correctly found that Fannie Mae had the right to possess the property.[5]

---

[5] It was disclosed at oral argument that FNMA had in fact redeemed the title to the property.

- 12 -

## IV

## Conclusion

For the foregoing reasons, we affirm the judgment of the Superior Court, to which the papers in the case may be remanded.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

**TITLE OF CASE:** Federal National Mortgage Association v. Etta E. Malinou et al.

**CASE NO:** No. 2013-179-Appeal.
(PD 09-3907)

**COURT:** Supreme Court

**DATE OPINION FILED:** October 20, 2014

**JUSTICES:** Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**WRITTEN BY:** Associate Justice Francis X. Flaherty

**SOURCE OF APPEAL:** Providence County Superior Court

**JUDGE FROM LOWER COURT**:

Associate Justice Patricia A. Hurst

**ATTORNEYS ON APPEAL:**

For Plaintiff: Michael J. Polak, Esq.

For Defendant: Martin S. Malinou, Pro Se