June 6, 2022

**Supreme Court**

No. 2020-166-Appeal.
(KM 18-756)

Rhode Island Housing and Mortgage       :
    Finance Corporation

               v.       :

    Edward Gordon.       :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

Rhode Island Housing and Mortgage      :
    Finance Corporation

              v.                        :

Edward Gordon.                          :

Present: Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ.

## O P I N I O N

**Chief Justice Suttell, for the Court.**  The *pro se* respondent, Ann Gordon, appeals from a Superior Court decree foreclosing her rights of redemption in property purchased by the petitioner, Rhode Island Housing and Mortgage Finance Corporation (RIHMFC), through exercise of its right of first refusal.  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided.  After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the decree of the Superior Court.

# I

## Facts and Travel

The pertinent facts have been gleaned from the Superior Court record, as well as the statements, supplemental statements, and attached exhibits filed on behalf of the parties pursuant to Article I, Rule 12A of the Supreme Court Rules of Appellate Procedure.

In her submissions before this Court, Gordon asserts that the property in question, located at 54 Bayberry Lane in East Greenwich, Rhode Island (the property), was acquired by her father, Edward Gordon, who designed and built a house on the property in 1957. Gordon states that she has lived in the home all her life; she lived there as a child and, after her father's death in 1998 and her mother's death in 2002, she and her sister continued living in the home.

In 2013, a tax lien was placed on the house as a result of nonpayment of taxes owed to the Town of East Greenwich. Because the property was a qualifying owner-occupied residential property, RIHMFC then exercised its preemptive right to purchase the property in May 2013. *See* G.L. 1956 § 44-9-8.3(a). At the time of the sale, the statutory five-year period allowing Gordon to exercise her rights of redemption began. *See* § 44-9-25(c).

On July 10, 2018, a little more than five years after it purchased the property, RIHMFC filed a petition in Superior Court to foreclose any existing rights of

redemption in the property. In October 2018, the title examiner's report, which showed only Edward Gordon and RIHMFC as having interests in the property, was filed; early in 2019, the report was approved by the Superior Court.

In June 2019, a citation issued, which was then mailed by certified mail to the property in July 2019. The mailed citation was addressed: "TO ALL WHOM IT MAY CONCERN, and Edward Gordon and if any of the above are deceased persons, then to their spouses, heirs, and/or devisees." The citation instructed the recipient, if they "desire[d] to make any objection or defense to the petition[,]" to "file a written appearance and an answer, under oath, setting forth clearly and specifically your objections or defense to each part of the petition[.]" The cover letter enclosed with the citation indicated that the recipient had until July 10, 2019, or until twenty days from receipt of the letter, whichever was later, to answer. Gordon received the citation on July 22, 2019.

In her submissions before this Court, Gordon contends that after receiving the citation she attempted to find assistance in responding to the citation. She alleges that she first called RIHMFC and spoke to an employee who told her to call back in several weeks; when Gordon told the employee that she had only a small amount of time to respond to the citation, the employee told her "[d]on't worry about that[.]" Gordon also claims that she attempted to get help from Rhode Island Legal Services, but she was told that the only lawyer that handled foreclosure of redemption cases

was away. Finally, Gordon alleges that she attempted to locate a company for a reverse mortgage. She ultimately was able to do so; however, her sister, who was over age sixty-two, passed away in September 2019, before the reverse-mortgage process was complete. Gordon, at age sixty, was not eligible for a reverse mortgage.

On September 20, 2019, RIHMFC filed an affidavit in support of an entry of default, alleging that more than twenty days had elapsed since service of process, that no respondent had defended against the citation, and thus that default was appropriate. Accordingly, default entered on November 7, 2019.

On November 14, 2019, Gordon moved for enlargement of time. On November 15, 2019, RIHMFC responded to Gordon's motion, consenting to the enlargement of time and requesting another citation to issue, in order to serve Gordon again and give her a further twenty days from receipt of the second citation to properly respond. However, Gordon alleges that no second citation was issued, and, although in its submissions before this Court petitioner has referenced a second citation, the Superior Court record does not indicate that a second citation was ever issued.

Subsequently, on December 9, 2019, a hearing on the motion to enlarge time was held. At this hearing, RIHMFC agreed to extend the time available to Gordon for redemption of the property to February 9, 2020. Gordon contested the redemption amount, stating that what she really owed was "much less" than what

- 4 -

RIHMFC claimed was due, and RIHMFC stated that it would file a motion that would "give Ms. Gordon the opportunity to see the numbers we're saying are owed."

RIHMFC then filed a motion to establish the amount and terms of redemption on December 12, 2019. In this motion, RIHMFC correctly indicated that under § 44-9-29, the court "'may in its discretion make a finding allowing the party to redeem, within a time fixed by the court[.]'" The motion also stated that the amount necessary to redeem the property was $51,177.94. Additionally, RIHMFC requested that the court enter an order stating that Gordon had to pay that amount, no later than February 9, 2020, to redeem the property, or otherwise RIHMFC would be entitled to apply for a decree to foreclose all rights of redemption. Although she had contested the amount owed at the hearing on the motion to enlarge time, Gordon did not file an objection to RIHMFC's motion to establish the amount and terms of redemption.

On December 23, 2019, an order entered establishing the redemption amount as $51,177.94 and the due date as February 9, 2020, and stating that if no redemption were made, RIHMFC would be entitled to apply for a final decree foreclosing all rights of redemption. Again, Gordon did not file any motions or otherwise contest this order establishing the redemption amount and terms.

On February 3, 2020, there was a second hearing, which centered on a consent order between Gordon and RIHMFC. The consent order, signed by both the attorney

for RIHMFC and Gordon, stated that Gordon was the only party with an interest in the property. It also set the redemption amount at $51,177.94 and changed the due date to March 5, 2020. The consent order also provided that, if the redemption payment was not made and if RIHMFC submitted an affidavit of noncompliance, a final decree would enter.

At the hearing, the hearing justice asked Gordon if she had read the consent order, if she understood that she had one month to pay the redemption amount, and if she understood that if she failed to pay the redemption amount at that time she would lose ownership of the property. Gordon answered all questions affirmatively. The hearing justice then approved the consent order, which entered the same day.

In her statements to this Court, Gordon alleges that she spoke with counsel for RIHMFC in the courthouse on February 3, 2020, before the hearing. Gordon claims that she had understood that the hearing was meant to establish the amount owed. Gordon alleges that before the hearing took place, RIHMFC's counsel met her outside the courtroom and told her she "had to sign the paper"—the consent order. Gordon contends that she told RIHMFC that the amount was incorrect, however, RIHMFC's counsel told her that if she "brought anything before the judge, [RIHMFC] would take back the extension to March 5, and demand payment" immediately. Gordon claims that she also told RIHMFC's counsel that she did not have the money yet, but RIHMFC responded that that meant she had to sign the

- 6 -

document.  Thus, Gordon contends that she signed the consent order "under duress" because she was "threatened and intimidated into signing the consent order and not bring[ing] anything before the judge" because otherwise she would "[lose] the extension [until] March 5[.]"

According to Gordon, on March 4, 2020, the day before the redemption amount was due, she again reached out to RIHMFC.  Gordon claims that she spoke to a "Mr. Russo" who indicated that RIHMFC would give Gordon more time to redeem.  However, Gordon alleges that RIHMFC never contacted her to do so. Gordon states that it is her belief that RIHMFC gives loans and payment plans, and that she asked Russo for either, but that she was told that those options were not available to her.

It is undisputed that Gordon did not make the redemption payment on or before March 5, 2020.  On March 9, 2020, RIHMFC filed an affidavit of noncompliance indicating that Gordon had not redeemed the property as allowed for in the consent order, and therefore that pursuant to the consent order, RIHMFC was entitled to a final decree foreclosing Gordon's right of redemption upon the filing of an affidavit of noncompliance.  A final decree foreclosing the rights of redemption

entered on March 18, 2020.  Gordon timely filed a notice of appeal on May 29, 2020.[1]

## II

## Discussion

## A

## Consent Order

On appeal, Gordon takes issue with various aspects of the procedure in the Superior Court.  Gordon contends that there was error in the proceeding because her father's name was used for the initial petition, and thus for the case name, although he was deceased.  Gordon further avers that she was not properly notified of the proceedings because of the delay between the beginning of the case and her receipt of the citation, and because no second citation ever issued, depriving her of a second chance to respond.  Additionally, Gordon asserts that her property was exempt from taxation for religious reasons, and that she and her sister were exempt from paying taxes because of their low income and disabilities, and therefore that the taxes for which the property was sold are not actually owed.

---

[1] Although the general rule requires civil appeals to be filed within twenty days of a final decree, *see* Article I, Rule 4(a) of the Supreme Court Rules of Appellate Procedure, Gordon's appeal was timely under an Executive Order of this Court which extended any filing deadlines that would have expired between March 17, 2020 and May 17, 2020 to May 29, 2020. *See* Supreme Court Executive Order No. 2020-09.

Assuming *arguendo* that at least some of these claims have merit, they are nonetheless not reviewable because Gordon entered into a consent order establishing the amount owed and setting the terms of redemption. Once a consent order is entered into "relative to an evidentiary fact or an element of a claim, [it] is conclusive upon the parties and removes the issue from the controversy" such that the issue "is no longer a question for consideration by the tribunal." *McCulloch v. McCulloch*, 69 A.3d 810, 824 (R.I. 2013) (quoting *In re McBurney Law Services, Inc.*, 798 A.2d 877, 881-82 (R.I. 2002)).

Gordon argues, however, that the consent order is invalid because she was "threatened and intimidated" into signing the consent order. It is true that we have previously held that "fraud, mutual mistake, actual lack of consent to [the] order, or some other extraordinary circumstance" are proper bases for setting aside a consent order. *Richardson v. Smith*, 691 A.2d 543, 546 (R.I. 1997). However, here, the evidence shows that Gordon actually consented to the order, demonstrated by her signature on the order, her indication to the hearing justice that she read and understood what she was signing, and her failure to raise an issue with the consent order before the hearing justice.

There are no facts here that suggest coercion or duress that would obviate Gordon's apparent consent. Gordon claims that, before the February 3 hearing, RIHMFC's attorney told her that she "had to sign the paper," and that if she "brought

anything before the judge, they would take back the extension to March 5, and demand payment then[.]" However, at the time of the February 3 hearing, an order had already entered in December 2019 establishing the amount owed and setting a due date of February 9, and no further extension had been granted. Thus, in stating that if the consent order was not signed, there would be no extension until March, RIHMFC was threatening to do no more than what it was already legally entitled to do—demand payment on February 9. "It is neither coercion nor duress to threaten or to do what one has a right to do." *Dispeau v. First National Bank of Pawtucket*, 24 R.I. 508, 510, 53 A. 868, 868 (1902).

**B**

**Recusal**

Gordon also contends that the hearing justice erred by not recusing himself. Gordon claims that the hearing justice had previously held various government positions, that he had previously served on RIHMFC's board of commissioners, and that he was involved with real estate companies for over forty years. Therefore, Gordon asserts, the hearing justice should have recused himself.

However, Gordon concedes that she did not raise this issue below; thus, she is precluded by our well-established raise-or-waive rule from raising it here. *See Decathlon Investments v. Medeiros*, 252 A.3d 268, 270 (R.I. 2021) ("According to this Court's well settled raise-or-waive rule, issues not properly presented before the

trial court may not be raised for the first time on appeal.") (quoting *Federal National Mortgage Association v. Malinou*, 101 A.3d 860, 865 (R.I. 2014)). This rule is not affected by respondent's claim that she did not learn more about the hearing justice until she began her research for this appeal or by her *pro se* status. *See Pelumi v. City of Woonsocket*, 180 A.3d 840, 841 (R.I. 2018) (mem.) (stating that this Court "cannot and will not entirely overlook established rules of procedure" even for *pro se* parties) (quoting *Jacksonbay Builders, Inc. v. Azarmi*, 869 A.2d 580, 585 (R.I. 2005)).

Additionally, even if we considered Gordon's argument about recusal, she has not met her burden to show that the hearing justice should have recused himself in the instant case. In another case involving a *pro se* party, we stated that "[a] party seeking recusal must establish that the justice has a 'personal bias or prejudice * * * calculated to impair his or her impartiality seriously and to sway his or her judgment.'" *Ryan v. Roman Catholic Bishop of Providence*, 941 A.2d 174, 185 (R.I. 2008) (brackets omitted) (quoting *Kelly v. Rhode Island Public Transit Authority*, 740 A.2d 1243, 1246 (R.I. 1999)). Gordon's claims about the hearing justice's prior positions and real estate involvements, even if taken as true, do not establish a bias

or prejudice that would have seriously impaired the hearing justice from acting impartially in this case.[2] Therefore, Gordon's arguments as to recusal are unavailing.

## C

## Duty

Gordon also asserts that she is entitled to relief from judgment because RIHMFC had a statutory duty under the Madeline Walker Act "to assist * * * owner[s] to discharge lien[s,]" for which she cites to § 44-9-8.3. "This Court reviews questions of statutory construction and interpretation *de novo*." *Shorr v. Harris, as Trustee of Trust of Anna H. Blankstein*, 248 A.3d 633, 637 (R.I. 2021) (quoting *Miller v. Saunders*, 80 A.3d 44, 50 (R.I. 2013)). "When statutory language is clear and unambiguous, we give the words their plain and ordinary meaning." *Id.* (alteration omitted) (quoting *Miller*, 80 A.3d at 50).

Here, the statute to which Gordon cites does not state that RIHMFC has such a duty to assist owners to discharge liens; rather, it states that for properties where it has a statutory right of first refusal, RIHMFC "*may* assist the owner to discharge the lien *or* take title and acquire the property in its own name pursuant to regulations to be developed by the corporation, consistent with its purposes." Section 44-9-8.3(a) (emphasis added). Thus, according to the clear and unambiguous language of the

---

[2] We also note that, at oral argument before this Court, Gordon conceded that the hearing justice was "more than fair" to her in the proceedings below.

- 12 -

statute, RIHMFC has discretion to choose whether to initially assist the owner in discharging the lien or to take title directly, and therefore has no duty to always assist an owner. *See id.*; *see also Polaski v. O'Reilly*, 559 A.2d 646, 647 (R.I. 1989) (holding that a statute that used the word "may" "speaks in permissive rather than mandatory terms[,]" and thus that it did not create a statutory duty). Accordingly, Gordon is not entitled to relief from judgment because RIHMFC did not owe her a statutory duty.[3]

---

[3] Although we are unable to conclude that RIHMFC owed Gordon a duty based on the clear language of the statute, we do note the salutary purposes of the Madeline Walker Act, as codified in G.L. 1956 § 44-9-8.3.

According to RIHMFC's website, "[t]he Madeline Walker Act is a state law designed to help homeowners who have fallen behind on their taxes * * * to *avoid the loss of their home at tax sale*." RI Housing, *Madeline Walker Frequently Asked Questions*, www.rihousing.com/wp-content/uploads/MW_FAQs_ENGLISH.pdf (last visited June 3, 2022) (emphasis added). Therefore, the intent of the law is to avoid situations such as the one Gordon now finds herself in, where a homeowner loses their primary residence due to nonpayment of taxes.

Additionally, in its online materials about the Madeline Walker Act, RIHMFC indicates that it communicates directly with homeowners and provides assistance with the goal of helping homeowners keep their homes: "Once [RIHMFC] purchases your lien at tax sale, our staff reach out to you to determine how to get back on track with your tax payments. This may include developing a payment plan or connecting you with other resources that may be of assistance." *Id.*

Here, however, the record is devoid of any interactions between RIHMFC and Gordon before the foreclosure petition was filed in 2018. And when questioned at oral argument as to what assistance was given by RIHMFC to Gordon after the tax sale to aid Gordon in keeping her home, counsel for RIHMFC was unable to point to any communications between the two parties within that time frame.

## D

## Other Issues

Lastly, Gordon asserts that the hearing justice erred in not dismissing the case pursuant to Rule 38 of the Superior Court Rules of Civil Procedure and various sections of chapter 9 of title 44 of the general laws, and asks this Court to grant her relief from the judgment pursuant to various sections of chapter 9 of title 44 and G.L. 1956 § 9-21-2.[4]

However, Gordon does not further articulate her reasons for relying on these sections and rules. Accordingly, we deem these issues waived. "[S]imply stating an issue for appellate review, without a meaningful discussion thereof or legal briefing of the issues, does not assist the Court in focusing on the legal questions raised, and therefore constitutes a waiver of that issue." *Dunn's Corners Fire District v. Westerly Ambulance Corps*, 184 A.3d 230, 235 (R.I. 2018) (quoting *Giddings v. Arpin*, 160 A.3d 314, 316 (R.I. 2017) (mem.)).

---

[4] Specifically, Gordon cites to §§ 44-9-8.3, 44-9-24, 44-9-25(a), 44-9-28, and 44-9-35.

## III

## Conclusion

For the reasons set forth herein, we affirm the decree of the Superior Court.

The record shall be returned to the Superior Court.

Justice Robinson did not participate.



**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI  02903

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | Rhode Island Housing and Mortgage Finance Corporation v. Edward Gordon. |
| **Case Number** | No. 2020-166-Appeal.<br>(KM 18-756) |
| **Date Opinion Filed** | June 6, 2022 |
| **Justices** | Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Kent County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Richard A. Licht |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Nicole J. Benjamin, Esq. |
| | For Respondent:<br><br>Ann Gordon, *Pro Se* |